**CENTERVILLE INDEPENDENT SCHOOL DISTRICT OF LEON COUNTY, Texas, et al., Appellants,**

v.

**Yance WINGFIELD et al., Appellees.**

**No. 4866.**

Court of Civil Appeals of Texas, Waco.

Jan. 22, 1970.

Robert E. Burroughs, Centerville, for appellants.

Mac L. Bennett, Jr., Normangee, for appellees.

## OPINION

HALL, Justice.

Appellees initated this lawsuit, seeking to enjoin what they alleged was a threatened trespass by the appellant school district onto 39.4 acres of land owned by them. By cross-action, the school district condemned the northern 20 acres of the tract, alleging that the land was presently needed for its educational program "and to provide adequate space for public school needs in the future."

Trial was to a jury which found that the value of the 20 acres taken was $20,000; and, in answers to special issues two and three, that the remaining 19.4 acres had a value of $19,400 immediately before the taking and a value of $9,700 immediately after the taking. The date of taking was stipulated to be January 20, 1969.

The school district appeals on four points of error. It does not complain of the jury's finding on the value of the parcel taken, but it does contend that there is no probative evidence in the record to support the jury's answers to the second and third special issues, and, alternatively, that those answers are against the great weight and preponderance of the evidence.

Only two witnesses purported to give testimony of value of the remainder before and after the taking. John Callahan, a witness for the school district, expressed the opinion that the remainder had a reasonable market value of $350 per acre, or $7,000, immediately prior to the taking, and a value of $450 per acre, or $9,000, immediately after the taking. Harold Stern, a co-owner of the tract, testified as follows:

"Q. Prior to January 20, 1969, did you know the reasonable cash market value of the entire tract of land?

"A. Yes sir.

"Q. And what would you say was the value of the entire tract of land?

"A. Between $1,500 and $2,000 an acre.

"Q. And state whether or not that includes the 19.4 acre tract of land?

"A. Yes, sir.

"Q. All right. Now, then, after January 20, 1969, which is the date that the 20 acres was severed, do you know the reasonable cash market value of the 19.4 acre tract of land considered as severed land?

"A. Yes, sir, I think I do.

"Q. All right. And what is that value, then, please?

"A. I think it was worth about half as much - - - .

"Q. That would be - - - .

"A. As it was as part of the whole."

Appellant says that this testimony of Stern does not include a value of the remainder, exclusive of the tract taken, prior to the taking; and, therefore, that the jury's answer to special issue number two, which sets a value higher than that testified to by Mr. Callahan, is not supported by any evidence. We do not agree. As we understand Stern's testimony, he stated that the 20 acre tract taken and the 19.4 acre tract remaining had the *same values* per acre immediately prior to the taking; and that, in his opinion, the value was $1,500 to $2,000 per acre. We do not believe his testimony is reasonably or properly subject to any other interpretation. Other witnesses for the landowners and the school district set the value of the 20 acres at $1,500 per acre; $1,250 per acre; and $500 to $600 per acre.

As sole judge of the credibility of the witnesses and the weight to be given to the testimony, the jury had the right to accept, as it apparently did, the opinion expressed by Stern that immediately prior to the taking the 20 acre and 19.4 acre tracts had the same values per acre, 24 T.J.2d 42–46, Evidence, Sec. 549; and it had the right to set the value of the 19.4 acre tract immediately prior to the taking, as it did, at any amount between the highest and the lowest expressed by the witnesses. City of Fort Worth v. Estes, (Tex.Civ.App., 1955, writ ref., n. r. e.) *279 S.W.2d 687, 688*; Roberts v. State, (Tex.Civ.App. 1961, no writ hist.) 350 S.W.2d 388, 391; Tuttle v. State, (Tex. Civ.App., 1964, writ ref., n. r. e.) 381 S.W. 2d 330, 336; Gossett v. State, (TexCiv.App., 1967, writ ref., n. r. e.) 417 S.W.2d 730, 736.

Appellant asserts that the opinion expressed by Stern of damage to the remainder is a mere "naked and unsupported conclusion;" that there is no evidence in the record to show the nature of any alleged damage to the remainder nor relate any such damage to the market value of the property; and that, therefore, his opinion does not constitute evidence of probative force. We believe there is evidence to support Stern's opinion of damage to the remainder, and we overrule appellant's contention.

With the exceptions that there are two setoffs in the southeast boundary of the 39.4 acre tract, creating five "corners" there, and that the tract gradually widens as it progresses from North to South, it is generally in the shape of a square. From the northeast corner to the first setoff on the southeast of the original tract, it borders on U. S. Highway No. 75 for a distance of 1,038 feet. Because the taking is of the northern 20 acres, the remainder will have frontage on the highway of only 352 feet. Until the taking, the approach onto the property was at the northeast corner off highway No. 75, where the surface of the highway right-of-way and the property are even and smooth. However, a fairly deep drainage ditch, referred to by some witnesses as a "gully", is located along the border of the remainder tract with the highway.

Stern testified that after purchasing the 39.4 acres, he and the other owners "picked up all the many bits of metal, iron, timber and brick that were scattered over the place for the last hundred years;" had it re-plowed; "added minerals and fertilizer and grasses, coastal bermuda grass, and planted cover crops of crimson clover and legumes;" that the entire place "is well sodded with grasses of some character;" and that the sod is of a permanent nature. Appellees have used the tract as a quarantine or "holding station" for cattle enroute to their ranch; for keeping animals that need watching; for animal separation; and for hay purposes and grazing. Stern stated that there are no improvements on the 19.4 acres, but that the following improvements

are located on the 20 acres taken: a horse barn with four stalls and with an attached storage shed, and the shed has a reinforced grain room in it; three pens between the barn and the highway, with a loading chute; an old house used for storage; a two-story hay shed; two very high pens for containing stallions and other animals; another pen and storage shed with another horse stall in it; and a tenant house in which their tenant was living at the time of condemnation. Additionally, there are three stock ponds on the 20 acres. There is one small stock pond on the remainder.

Stern also gave the following testimony:

"Q. Can you explain to the jury what would cause that diminution in value (of the remainder)?

"A. Yes, sir. If it were separated from the other 20 acres it wouldn't be— couldn't be used for the same use it's presently put to, in my opinion, it's not big enough and it's oddly shaped. And in order to get to it, I don't know how much it would cost to build a road from the highway to the frontage because of that deep gully. We'd have to spend a lot more money to use it at all—sufficient for our present use.

" * * *

"Q. You say it would be difficult to use the remaining 19.4 acres because of getting from Highway 75?

"A. Yes.

"Q. It joins Highway 75 doesn't it?

"A. Yes, sir, but the lay of the land would require—Well, I don't know how to state how far it would require to build a ramp or something. Water would—I'm not an engineer. Just looking at the lay of the land, it would be difficult to build a road off of 75 into the property.

"Q. Do you and your brother own any land that adjoins that 19.4 acres?

"A. The twenty acres.

"Q. I'm talking about outside of the forty acre tract. Do you own any other land that adjoins it?

"A. No, sir."

Callahan said that the highest and best use of the remainder prior to the talking was for farming and ranching; and that after the taking its best use was for residential purposes.

A question of depreciated market value is largely a matter of opinion evidence, "and a very wide range of factors may be legitimately taken into consideration by qualified witnesses as the foundation for their opinions." Texas Pipe Line Co. v. Hunt, 149 Tex. 33, 228 S.W.2d 151, 155, 156 (1950).

Billy Lee Guthrie, a surveyor who testified as a witness for the school district, said that the west one-half of the 20 acre tract is higher in elevation than the intersection of its south line (which is the north line of the remainder) with Highway 75 by twenty feet; that the east edge of the remainder varies in heighth above the level of the roadway; that the highway is going downhill along the remainder; and that the extreme southeast corner of the remainder is above the center line of the highway. In answer to the question, "What about the northeast corner of the 19.4 acre tract?" he said: "No sir, its level. The northeast corner of the 19.4 acre tract is set in a depression. Actually, it would be the center line of a creek or a gully, sir, where it intersects the right-of-way line."

Some of the property is located in the southern part of the City of Centerville. There is an inference in the record that most, if not all, of the 20 acres taken are in the city limits; and that a major portion of the remainder is without the city.

The school district plans to build 24,000 square feet of new construction, in several different units, on the 20 acres; and move 13,000 square feet in buildings already constructed, onto the property. It plans a campus to accommodate at least a high school, and include a vocational depart-

ment, gymnasium and auditorium, concession stand, baseball field, football practice field, tennis courts, cinder track, athletic program dressing rooms, canopies and walks, and parking for students and employees.

We hold that the evidence is legally and factually sufficient to support the verdict.

The judgment is affirmed.