**Ransom HORNE, Jr., et al., Appellant,**

v.

**CHARTER NATIONAL INSURANCE COMPANY, Appellee.**

No. 18387.

Court of Civil Appeals of Texas, Fort Worth.

March 19, 1981.

Rehearing Denied April 9, 1981.

Edward R. Gwynn, Philip C. McGahey, Arlington, Charles G. Clay, Dallas, Byrd, Davis & Eisenberg, and Tom Davis, Austin, for appellants.

L. W. Anderson, Dallas, for appellee.

## OPINION

HUGHES, Justice.

Ransom Horne, Jr., Arlington Bank & Trust Company, Executor of the Estate of Glen Ray Howell, Deceased, and Judy Howell have appealed this suit initiated by Charter National Insurance Company, who sought declaratory judgment that a Beechcraft Baron aircraft which had crashed while being piloted by Glen Howell and was not insured for casualty loss under the terms of a policy issued by CTH Aviation Underwriters, Charter National's managing agent, after the crash. Ransom Horne, Jr., the named insured, and the other defendants claimed there was coverage under an oral binder issued before the crash. The trial court separately rendered partial summary judgment in favor of Charter National that no coverage existed under the policy because Glen Howell did not have the number of hours required under the policy to warrant coverage. Summary judgment was later rendered on a related matter that Charter National recover $27,341.61 from Horne under a breach of warranty endorsement contained in the insurance policy. Both dispositions are incorporated into a final judgment.

We reverse and remand.

The relationship of Horne and Charter National came into existence on January 3, 1977. On that date an oral binder was "issued" by CTH based upon information relayed over the telephone through Marc Stewart from Horne to W. H. Alderman, an aviation underwriter for CTH. Stewart was associated with Metro Insurance Agency, a "producer" which had no agency contract with CTH as of January 3, 1977. From 1969 through 1977 Metro had placed business with several companies on behalf of Horne on the basis of which company gave the most competitive premium quotation.

Stewart secured the information for Horne's 1977 policy application by telephone. Glen Howell was to be a named pilot in the policy declarations. Howell was present in Horne's office while Horne was on the telephone with Stewart. As Stewart would ask questions Horne would obtain the information from Howell and pass it on to Stewart. Somehow Stewart had recorded that Howell had 200 hours in "make and model" which in this case would be a Beechcraft Baron. An official investigation conducted after the crash revealed that Howell had only 101.7 total hours in a Baron.

Horne testified by deposition that Stewart did not inquire as to how many hours Howell had in a Baron. On the other hand, Stewart on deposition testified that he "separately" asked about Howell's hours in "make and model" and that Horne told him Howell had 200 hours.

After Stewart secured the information he proceeded to call three underwriters, one of whom was Alderman. After discussing the quotes provided by the underwriters with Horne, Stewart called Alderman back to accept CTH's quote. Alderman told Stewart the coverage would be bound as of January 3, 1977.

Stewart had his secretary type up an application to be sent to Horne for his signature. Delivery of the application was made to Horne with the erroneous information filled in. Horne testified that he signed the application without reading it. The application contained a provision which read:

"All particulars herein are warranted true and complete to the best of my/our knowledge and no information has been withheld or suppressed and I/we agree that this Application and the terms and conditions of the policy in use by the

insurer shall be the basis of any contract between me/us and the insurer. I hereby authorize this Company to investigate all or any qualifications or statements contained herein."

CTH received Horne's application on January 7, 1977. After processing the application a policy was issued by CTH on January 17, 1977. Howell crashed the Baron on January 12, 1977, before issuance of the policy.

The "Order for Partial Summary Judgment" recites:

"[A]nd it further appearing that said Motion is accompanied by exhibits and depositions, and the Court having considered the pleadings, depositions and exhibits on file, together with the briefs and arguments of counsel, finds that the policy issued by Charter National Insurance Company, Plaintiff herein, being Policy AV262003, attached to Plaintiff's Original Petition for Declaratory Judgment and marked Exhibit 'A' did not cover the accident in question because the said Glen Ray Howell, pilot of the aircraft, did not have adequate hours of flying experience as called for under the 'Pilot Warranty' Clause' in said policy, and thus was excluded from coverage in said policy, and that the policy was prepared by the Plaintiff, Charter National Insurance Company, was in accordance with the application executed by the insured, Ransom Horne, Jr., also known as John R. Horne, Jr., and that any alleged misrepresentations made by the agent, Marc Stewart, were not binding on the Plaintiff, nor could they be properly introduced into evidence to vary the terms of the written application, and accordingly, a partial summary judgment should be rendered on behalf of the Plaintiff, Charter National Insurance Company, for declaratory relief that no coverage existed under said policy for the accident in question . . . ."

In their brief, defendants (which denomination includes Horne) assert the existence of fact issues which are also asserted in their "Answer and Response to Plaintiff's Motion for Summary Judgment". It is Charter National's contention that the trial court was correct in disregarding any attempts by defendants to raise material issues of fact for the reason that said response was filed after the hearing on Charter National's motion and was therefore untimely.

■ The "Order for Partial Summary Judgment" recites that the motion came on for hearing on February 27, 1980. The record reveals that the defendants' response was file marked on January 31, 1980. Charter National says the actual date of the hearing was December 28, 1979. In the absence of a nunc pro tunc order we are bound to accept as the date of the hearing that which is recited in the "Order for Partial Summary Judgment". We will therefore consider that the defendants' written response to Charter National's motion for summary judgment was on file at the time of the hearing.

Defendants' first point of error asserts that the trial court failed to follow Art. 21.02 of the Texas Insurance Code and erroneously held that Marc Stewart was the agent of Horne therefore making Horne responsible for the mistake.

Tex.Ins.Code Ann. art. 21.02 (1963) provides in pertinent part:

"Any person who solicits insurance on behalf of any insurance company, . . . or who takes or transmits other than for himself any application for insurance . . . to or from such . . . shall be held to be the agent of the company for which the act is done, or the risk is taken, *as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. . . .*"

■ While Art. 21.02 defines "agent" for purposes of certification, etc., under Chapter 21 of the Insurance Code we do not interpret it as dispositive of the issue as to whether an "agent" represents the insured or insurer when a question arises as to who is bound by misinformation appearing on an application for insurance. Generally, the question of agency is one of fact. *Founda-*

*tion Reserve Insurance Co. v. Wesson*, 447 S.W.2d 436 (Tex.Civ.App.—Dallas 1969, writ ref'd).

In any event, assuming as the trial court held, that Stewart was the agent of Horne, there still appears to be a question of material fact.

■ By their second through fourth points of error, defendants assert that the trial court failed to apply Art. 21.16 of the Texas Insurance Code when it held that there was coverage because Howell did not have as many hours of flying time in a Baron as the application represented he did. In particular, the defendants argue that the trial court erred in holding as a matter of law that the representation that Howell had at least 200 hours in the Baron aircraft was "material to the risk" and in holding that Charter National need not show a causal connection between Howell's lack of 200 hours in the Baron aircraft and the crash.

Although Alderman testified that he would have charged a higher premium to bind the coverage if he had known Howell had 75 hours in the Baron "the misrepresentation is not 'material to the risk,' as that phrase is used in the statute, unless it actually induced the insurance company to assume the risk." *Harrington v. Aetna Casualty and Surety Company*, 489 S.W.2d 171, 177 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). In *Harrington* the court specifically rejected a contention that a misrepresentation in an application for insurance is "material to the risk" if, had the true facts been known, the insurer would have charged a higher premium. We cannot hold on this ground that the representation that Howell had 200 hours in the Baron was "material to the risk" as a matter of law.

Tex.Ins.Code Ann. art. 21.16 (1963) expressly makes "materiality to the risk" and causal connection questions of fact. We hold that the issues as to whether the representation on the application for insurance that Howell had 200 hours in the Baron was a misrepresentation that was "material to the risk" or whether his lack of 200 hours contributed to the crash were questions of fact precluding summary judgment. *Occidental Life Insurance Co. of Cal. v. King*, 365 S.W.2d 815 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.); see also *Hines v. Bankers Life and Cas. Co.*, 572 S.W.2d 804 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

■ Even if the representations were said to be "material to the risk" etc. there would also be a fact issue existent as to whether there was any intent to deceive. *Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 617 (Tex.1980).

Defendants' fifth point of error asserts that the trial court erred in holding that the exclusion provision in the policy issued after the loss occurred precluded coverage for the losses incurred.

The judgment recites that there was no coverage because Howell did not have adequate hours of flying experience as called for under the "Pilot Warranty Clause" of the policy which was prepared "in accordance with the application" executed by Horne. Since there appears to be a question of fact as to which policy was to be issued on this binder (one of CTH's policies did not include an "exclusion" clause), it is very questionable whether the trial court should have based its decision on a *policy* which was not issued at the time of the accident. In any event, it does not appear that the trial court relied upon the "exclusion" clause but rather relied on what it calls the "Pilot Warranty Clause" which apparently allows for coverage provided the named pilots in the declarations have the number of hours of flying time they were said to have when the application was submitted. Inasmuch as the "Pilot Warranty Clause" was relied upon by the trial court to deny coverage, we find it unnecessary to elaborate on the defendants' arguments as to the "exclusion" clause because the discussion under points of error two through four as to "materiality to the risk" and causation in conjunction with the application also apply to the misinformation contained in the "Pilot Warranty Clause".

Having sustained points of error two through four we hold that summary judgment was improper as the summary judgment record does not establish, as a matter of law, that there is no genuine issue of material fact.

The judgment of the trial court is reversed and the cause remanded for trial.