**MEMBERS INSURANCE COMPANY, Appellant,**

v.

**Glenn K. ENGLISH & Rachel H. English, Appellees.**

**No. 04–83–00124–CV.**

Court of Appeals of Texas, San Antonio.

March 19, 1986.

Gail Dalrymple, San Antonio, for appellant.

Robert I. Kahn, San Antonio, for appellees.

Before CADENA, C.J., and BUTTS and REEVES, JJ.

## OPINION

CADENA, Chief Justice.

This suit was filed by plaintiffs, Glenn K. English and Rachel H. English against defendant, Members Insurance Company, to recover under a Texas Standard Homeowners Policy purchased by plaintiffs from defendant insuring plaintiffs against loss of their residence by fire. Plaintiffs filed a motion for "partial" summary judgment, alleging that, as a matter of law, they were entitled to judgment for $50,000.00 as damages for defendant's breach of its obligation under the policy, together with a 12% penalty and attorney's fees. The trial court granted such motion, except insofar as the attorney's fees were concerned. Subsequently, a hearing was held on the question of attorney's fees and the trial court then entered judgment awarding

plaintiffs $50,000.00 under the policy and $6,000.00 as a penalty, plus prejudgment interest at the rate of 6% and attorney's fees.

Defendants appeal from this judgment, asserting that there were questions of material fact as to its liability under the policy; that plaintiffs were not entitled to recover the 12% penalty, and that the award of attorney's fees was improper or, in the alternative, that the amount awarded was excessive.

In order to understand defendant's contentions concerning the propriety of the summary judgment, it is necessary to set out at some length the manner in which this controversy arose.

In January, 1975, plaintiffs entered into a contract with Carl Schweers calling for the construction by Schweers of a house on land owned by plaintiffs in Medina County. Plaintiffs executed a note for the cost of constructing the house and executed a builder's and mechanic's lien to secure payment of the note. The agreement required plaintiffs to keep the improvements on the property insured against fire.

On April 4, 1979, plaintiffs purchased from defendant the Homeowner's Policy involved in this case. On August 16, 1979, Schweers purchased from Westchester Fire Insurance Company a builder's risk policy covering his interest in the same house.

The house had been completed in April, 1979, but plaintiffs made no payments to Schweers, although they had obtained a commitment for a mortgage loan. In November, 1979, Schweers filed suit on the note and to foreclose his lien. Plaintiff defended on the ground that the house had been defectively constructed. Plaintiffs also filed a counterclaim alleging fraud, negligence, breach of Schweers' obligation to construct the house in a good and workmanlike manner, and violations of the Deceptive Trade Practices Act.

On May 2, 1980, while this suit was still pending, the house was completely destroyed by fire. Plaintiff and Schweers then entered into an agreement settling the case. Under this agreement plaintiffs acknowledged and "certified" that they "have no interest in and/or assign" to Schweers any interest they might have in the Westchester policy. The instrument signed by plaintiffs recited that Schweers had obtained the policy without the knowledge of plaintiffs and that plaintiffs "never ratified, accepted or adopted" the Westchester policy "or any benefits thereunder." Plaintiffs also agreed to waive any cause of action they might have arising out of the contract for construction of the house by Schweers. Schweers waived any interest in the policy purchased by plaintiffs from defendant as well as any lien he might have on plaintiffs' property, agreeing to assign such lien to plaintiffs. Schweers gave up any cause of action he might have against plaintiffs under the contract for construction of the house. Schweers executed a release of lien.

Westchester Fire Insurance Company paid Schweers $30,000.00 under the builder's risk policy. Defendant refused to pay under its policy for the destruction of the home.

Defendant asserts that the trial court erred in granting summary judgment in favor of plaintiffs because (1) there is an issue of fact as to whether the "other insurance" clause in the policy it issued to plaintiffs is applicable and (2) there is an issue of fact as to whether plaintiffs owned an insurable interest in the house covered by the policy.

Defendant argues that if plaintiffs knew of the Westchester policy or "ratified" such policy, they are precluded from recovering under both policies.

■ The summary judgment evidence relied on by defendant consists primarily of the deposition of Schweers. Schweers testified that he received the policy he purchased along with a carbon copy of a letter from his insurance agent to plaintiffs. The original letter was addressed to plaintiffs at "Rio Medina, Texas." In the petition filed by Schweers in November, 1979, he alleged that the residence of plaintiffs was "Star Route Box 30, in Rio Medina, Texas."

There is no summary judgment evidence that the letter to plaintiffs was properly stamped. Although Schweers stated that the letter was not returned to the sender, he had no personal knowledge of this and admitted that he was merely repeating what the insurance agent had told him. In fact, the Schweers deposition, insofar as it concerns the letter alleged to have been sent to plaintiffs by the insurance agent, appears to be based entirely on hearsay. There is nothing in the deposition which suggests that Schweers had personal knowledge concerning the letter.

At the time the judgment in this case was signed, Rule 802, TEX.R.EVID., was not in effect, and the well established rule at that time was that hearsay testimony, even if admitted without objection, lacked probative force. *Barrera v. Sanchez*, 679 S.W.2d 704, 706 (Tex.App.—San Antonio 1984, no writ). Further, there is no evidence that the letter was correctly addressed. Under these circumstances, there can be no presumption that plaintiffs received the letter which referred to the Westchester policy.

In his deposition, Schweers said that his lawyer, Jay Sam Levey, had discussed the Westchester policy with plaintiffs' attorney prior to the fire, and that the two attorneys discussed the desirability of having two policies on the same house. However, Schweers admitted that he had no personal knowledge of these facts and that his testimony was based entirely on what he had been told by his attorney. Such hearsay testimony cannot be given probative force. *Id.*

Plaintiffs denied knowledge of the Westchester policy in their depositions. In the absence of evidence of probative force tending to show that they had knowledge of the Westchester policy, it cannot be said that there is an issue of fact concerning their knowledge.

Defendant contends that, in any event, the record shows the existence of an issue of fact concerning "ratification" of the Westchester policy by plaintiffs. This contention is based on the agreement settling the suit between plaintiffs and Schweers.

As already mentioned, as part of the settlement agreement plaintiffs agreed to "waive" any interest they might have in the Westchester policy. Schweers, in turn, agreed to waive any interest he might have in the policy issued by defendant and also agreed to discharge the lien he had on the house he had built for plaintiffs. Defendant argues that plaintiffs, by waiving any interest they might have in the Westchester policy and accepting Schweers' discharge of the lien, received benefits from the Westchester policy and ratified it.

In *St. Paul Fire & Marine Insurance Co. v. Crutchfield*, 162 Tex. 586, 350 S.W.2d 534, 538 (1961), the Supreme Court, while recognizing that ratification of a policy purchased without a party's knowledge, authority or consent could result from that party's acceptance of benefits under the policy, held there had been no acceptance under the facts there presented.

■ Ratification by a party of a policy purchased by another even without knowledge, authority or consent would result from an affirmative adoption of the policy or acceptance of its proceeds. Annot. 52 A.L.R.3d 235 (1973). The Texas courts have found ratification where suit has been filed on the policy, as in *United States Fire Insurance Co. v. Stricklin*, 556 S.W.2d 575 (Tex.Civ.App.—Dallas 1977), *writ . ref'd n.r.e. per curiam*, 565 S.W.2d 43 (Tex. 1978), and where premiums have been paid on the policy, as in *Interstate Auto Insurance Co. v. Edens*, 235 S.W. 671, 673 (Tex. Civ.App.—Beaumont 1921, no writ). But in *Home Insurance Co. v. Collins*, 55 S.W.2d 898, 900 (Tex.Civ.App.—Dallas 1932, writ ref'd), the court held that the mere filing of a claim did not result in ratification.

■ In this case plaintiffs did not file suit on the Westchester policy. They filed no claim under that policy. They did not pay the premiums on such policy. The proceeds of the policy were paid to Schweers, not to plaintiffs.

Plaintiffs consistently disclaimed any interest in the Westchester policy and asserted that they had no interest in such policy which they could assign to Schweers. The Westchester policy is not before us but in his deposition Schweers unequivocally testified that the Westchester policy was simply a "builder's risk" policy and protected only Schweers' interest in the home and not the interest of plaintiffs.

Plaintiffs "waiver" of an interest in the policy which they never claimed can not be held to be evidence of a ratification of that policy. Defendant claims, however, that since Schweers released his lien as part of the settlement agreement in exchange for plaintiffs' agreement to forego any claim under the Westchester policy, plaintiffs received a benefit from the Westchester policy.

The settlement agreement involved the mutual release of claims which plaintiffs and Schweers were asserting against each other in the suit which was originally filed by Schweers against plaintiffs. Plaintiffs gave up more than an interest, which they never claimed, in the Westchester policy. They gave up their asserted counterclaims based on fraud and negligence, breach of contract because of the failure of Schweers to build the house in a good and workmanlike manner, and violation by Schweers of the Deceptive Trade Practices Act.

It must be borne in mind that the right of Schweers to recover under his policy with Westchester was not dependent upon plaintiffs consent. There is no hint in the record that Westchester was under any obligation to plaintiffs. The only real benefit Schweers received from the settlement agreement was the dismissal of plaintiffs' counterclaims seeking damages because of the faulty construction of the house. It cannot be imagined that plaintiffs would give up their counterclaims without an agreement by Schweers to give up his claim to foreclosure of the lien. There is nothing to indicate that plaintiffs waived their interest in the Westchester policy in exchange for an agreement by Schweers to apply the proceeds of the policy to the debt which Schweers claimed plaintiffs owed him.

The cases relied on by defendant are distinguishable. In *United States Fire Insurance Co. v. Stricklin, supra,* both the mortgagor and mortgagee had purchased insurance policies. The court held that the mortgagee had ratified the "other insurance" policy purchased by the mortgagor by filing suit in an attempt to collect under the mortgagor's policy. 556 S.W.2d at 579. *Cheatwood v. De Los Santos,* 561 S.W.2d 273 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.) involved only one insurance policy and merely held that a vendor of a house held a portion of the proceeds of the policy in trust for the vendees who were uninsured. In *Paramount Fire Insurance Co. v. Aetna Casualty & Surety Co.,* 163 Tex. 250, 353 S.W.2d 841 (1962), vendee filed suit under both his policy and that of the vendor. *Tillerson v. Highrabedian,* 503 S.W.2d 398 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.) involved only one insurance policy. The buyer of a house agreed to procure a policy which would protect his interest and that of the builder. After the house was destroyed by fire, the insurer paid the proceeds from the policy to the buyer. The court properly held that under such facts the builder had a right to share in such proceeds to the extent of his loss.

■ Since plaintiffs did not authorize Schweers to purchase the Westchester policy for their benefit, were unaware of its existence and did not ratify the purchase of such policy by Schweers, their right to recover under the policy they purchased from defendant was not barred.

■ As already mentioned, the Westchester policy insured only the interest of Schweers in the property. The policy taken out by Schweers inured solely to his benefit. Since the plaintiffs purchased their policy from defendant in their own names without any stipulation or understanding that such insurance was for the benefit of Schweers, it will be presumed that they insured only their own interest in the property. *American Cent. Ins. Co. v.*

*Harrison,* 205 S.W.2d 417, 418 (Tex.Civ. App.—Eastland 1947, writ ref'd n.r.e.). Where owners of separate interests in property insure only the interest each has in such property, the provisions of an "other insurance" clause respecting apportionment of the proceeds of each policy are inapplicable, since "other insurance" clauses apply only when the "other" fire insurance covers the same property and interest therein against the same risk in favor of the same party. *Id.* at 420. *See also Automobile Insurance Company v. Teague,* 37 S.W.2d 151, 154 (Tex.Comm'n App.1931, judgmt adopted). The evils which "other insurance" clauses are designed to prevent are not present where each policy insures only the interest held by each separate owner of an insurable interest in the property.

Defendant argues that plaintiffs failed to establish the absence of a material issue of fact concerning their ownership of an insurable interest in the home. This argument is based on the fact that plaintiffs made no payments whatever on the purchase price of the home and that they are no longer liable because the debt has been satisfied by application of the proceeds of the Westchester policy.

■ Defendant relies on *Tillerson v. Highrabedian, supra,* in support of its contention that the owner of a house destroyed by fire has an insurable interest to the extent of the payments he has made on the house. This contention overlooks the rule that an insurable interest in property exists when the insured "derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Smith v. Eagle Star Insurance Co.,* 370 S.W.2d 448, 450 (Tex.1963). Clearly, the buyer of a home, even though he has made no payments, derives a pecuniary benefit from the continued existence of the property, since absent such continued existence, he would still be bound to make the payments although he had been left without a home. A person who remains saddled with the debt but who has lost the

home has sustained a pecuniary loss. The fact that the debt is subsequently discharged has nothing to do with the existence of an insurable interest at the time the policy is purchased or at the time of the destruction of the home.

In any event, the record conclusively shows that plaintiffs had obtained a loan commitment on the property, had taken possession and had made improvements representing an expenditure in excess of $2,000.00 for materials and more than 300 hours of labor. Such evidence establishes that plaintiffs would have derived a benefit from the preservation and continued existence of the house. *See First Preferred Insurance Co. v. Bell,* 587 S.W.2d 798, 801 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.).

As required by TEX.INS.CODE ANN. art. 6.13 (Vernon 1981), the policy issued by defendant provides that in case of a total loss of the insured property by fire, the policy shall constitute a liquidated claim against the company for the full amount of the policy. In such cases, no further proof of the extent of the loss is required. *Bennett v. Imperial Insurance Co.,* 606 S.W.2d 7, 9 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.).

In this case it was undisputed that the house was a total loss. Therefore there was no question presented as to the extent of the loss and plaintiffs established a liquidated claim for the face amount of the policy.

■ Defendant correctly asserts that TEX.INS.CODE ANN. art. 3.62 (Vernon 1981) does not authorize the award of attorney's fees to plaintiffs in this case. However, the award of attorney's fees was authorized under TEX.REV.CIV.STAT. ANN. art. 2226 (Vernon 1971) (Repealed 1985). *Bellefonte Underwriters Insurance Co. v. Brown,* 663 S.W.2d 562, 575 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Aetna Fire Underwriters Insurance Co. v. Southwestern Engineering Co.,* 626 S.W.2d 99, 103 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.). Decisions prior to 1981 holding that article 2226 does

not authorize the recovery of attorney's fees against fire insurance companies have not been followed since the decision in *Prudential Insurance Co. v. Burke*, 614 S.W.2d 847, 850 (Tex.Civ.App.—Texarkana), *writ ref'd n.r.e. per curiam*, 621 S.W.2d 596 (Tex.1981). *See Commonwealth Lloyd's Insurance Co. v. Thomas*, 678 S.W.2d 278, 283 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

 The trial court erred in awarding plaintiffs the 12% penalty authorized by TEX.INS.CODE ANN. art. 3.62 (Vernon 1981), since that provision does not apply to fire insurance companies. *See Allstate Insurance Co. v. Chance*, 582 S.W.2d 530, 533 (Tex.Civ.App.—Beaumont), *rev'd on other grounds*, 590 S.W.2d 703 (Tex.1979); *Evans v. Pacific National Fire Insurance Co.*, 367 S.W.2d 85, 87 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.).

The judgment of the trial court is reformed by deleting the award of the 12% penalty to plaintiffs. In all other respects the judgment is affirmed.