UNION NATIONAL BANK OF LITTLE ROCK and Aetna Casualty & Surety Company, Appellants (Cross–Appellees),

v.

Judy McDaniel MORIARTY, Appellee (Cross–Appellant).

No. 9588.

Court of Appeals of Texas, Texarkana.

Dec. 22, 1987.

Rehearing Denied Feb. 17, 1988.

**250**

Kelvin Wyrick, Texarkana, G. David Westfall, Dallas, for appellants.

Michael Friedman, Friedman & Hooper, Texarkana, for appellee.

1. The Bakers assigned their interest to Moriarty

**GRANT, Justice.**

Appellants Union National Bank of Little Rock (hereafter referred to as Union Bank) and Aetna Casualty & Surety Company (hereafter referred to as Aetna) appeal from a judgment in which they were held liable for failure to provide Judy Moriarty with appropriate fire insurance coverage on a house located in Bowie County. Cross-appellant Moriarty appeals from the refusal of the trial court to provide attorney's fees.

Judy Moriarty purchased a house in Texarkana, Texas, in 1966 and began making payments under a deed of trust and note. She sold the house to the Bakers in 1980 for $26,500 under a contract of sale[1] and moved to Houston. She notified Union Bank, which had begun servicing the loan in 1980, of her new address, but she did not notify Aetna. She also notified Union Bank that she was divorced and had been awarded the house in the divorce proceeding. The house burned July 7, 1983.

Part of the payments made by Moriarty to Union Bank went into an escrow fund, from which the bank paid the insurance agent Dean Barry, who in turn sent the payments to Aetna. Testimony indicates that the insurance policy premiums to cover just the house while being rented would have been less than the premium paid to cover the house *and* Moriarity's personal effects while Moriarty was living there.

When the house burned, Aetna denied the claim for benefits because Moriarty (as the insured) was not living in the house at the time of the fire as required for coverage under the insurance policy.

According to the testimony, Moriarty received a copy of the policy each year, but she did not examine it and did not realize that the policy had become invalid by reason of the fact that she no longer resided in the house. There is a presumption in Texas that an insured knows the contents of his or her insurance policy, but this presumption can be overcome by proof that he or she did not know. An insured is allowed to rely on the knowledge and ex-

prior to this trial.

251

pertise of the insurer to provide the correct policy. *Colonial Savings Association v. Taylor,* 544 S.W.2d 116 (Tex.1976).

The jury found that Union Bank was an agent for Aetna in accordance with the statutory definition provided by Tex.Ins. Code Ann. art. 21.02 (Vernon Supp.1987). The jury further found that Union Bank was negligent in failing to advise Aetna of Moriarty's change of residence so that the appropriate insurance policy could be issued, and that this negligence was a proximate cause of Moriarity's damages in the amount of $24,000.

Aetna contends on appeal that there was insufficient or no evidence to show that Union Bank had a duty to obtain insurance for Moriarty; that there was insufficient evidence or no evidence to show that Union Bank had a duty to inform Aetna of the change of residence; that there was insufficient evidence or no evidence of negligent conduct by Union Bank; that there was no pleading by Moriarty of negligence by Union Bank; that special issue two was Global and assumed controverted facts in issue; that there was insufficient evidence or no evidence to show that Aetna issued any policy or was the insurer or that Union Bank engaged in conduct as an agent of Aetna; that the damage issue was a comment on the evidence and did not properly limit recoveries to the policy limit; and that there was insufficient evidence or no evidence to support the damage finding.

Union Bank contends on appeal that there was no evidence that Union Bank ever secured or renewed the insurance policy in question, that there was no evidence that Union Bank was an agent for Aetna, that there was insufficient evidence or no evidence to show any loss by Moriarty, and that the amount of damages was found by using an incorrect measure.

In reviewing no evidence points, the court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary and conflicting evidence. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex. 1981). Insufficient evidence points require that we consider and weigh all the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Aetna and Union Bank contend that there was no evidence to support special issue two in which the jury found that Union Bank was negligent in failing to tell Aetna about the residence changes.[2] We agree. There is no evidence showing that Union Bank failed to inform Aetna about the changes of address. The mere fact that Aetna did not issue the proper policy is not proof that Union Bank did not notify Aetna of Moriarty's change of address. This was the only negligence issue submitted to the jury, and the legal insufficiency precludes any recovery by Moriarty against Union Bank. Because of our determination on this issue, we do not address the other points raised on the liability of Union Bank.

■ We now look at the points of error that are applicable to the issue of Aetna's liability. The only remaining jury findings against Aetna are special issues four and five. In special issue four, the jury found that Union Bank was an agent for Aetna "in securing and/or renewing the insurance policy" on the house. Special issue five found that the amount of damage that Moriarty suffered as a result of the fire loss was $24,000. Moriarty has contended that Aetna is estopped from using the defense that she was not a resident of the house at the time of the fire, because Aetna had continued to accept premiums for coverage even though its agent, Union Bank, had received notification of her change of residency. If Union Bank is Aetna's agent, Union Bank's knowledge will be imputed to Aetna. *Republic Bankers Life Insurance Co. v. Coffey,* 490 S.W.2d 231 (Tex.Civ. App.–Amarillo 1973, writ ref'd n.r.e.)

---

**2.** This issue did not coincide with the pleadings set forth in Moriarty's second amended cross-action, on which she went to trial. In that pleading, Moriarty alleged that Union Bank was neg- ligent in failing to obtain the proper policy. She did not allege negligence on the basis of the failure to notify the insurance company of the change of address.

There were no jury findings pertaining to Moriarty's notification to Union Bank of her change of address or on the issue of whether the facts of the case constituted estoppel. The evidence is undisputed that Moriarty notified Union Bank of her change of address. On the failure to submit the issue of estoppel, we apply Tex.R. Civ.P. 279. This rule provides that when a ground of recovery consists of more than one issue, if one or more of the issues necessary to sustain the ground of recovery are submitted to the jury and one or more such issues are omitted, and there is evidence to support a finding thereon, such omitted issues shall be deemed as found by the court in such a manner as to support the judgment. We find that there is sufficient evidence to support the finding of estoppel in this case.

■ Estoppel[3] may operate to avoid a forfeiture of an insurance policy, but estoppel cannot be used to change, rewrite and enlarge the risks covered by a policy. *Texas Farmers Insurance Co. v. McGuire*, 31 Tex.Sup.Ct.J. 23, 744 S.W.2d 601 (1987). This distinction is sometimes difficult to apply. In the *McGuire* case, the policyholder claimed benefits for injuries sustained while operating a vehicle owned by his employer. This would have required an enlargement of the risk under the policy. An often cited case concerning this type of estoppel is *Washington Nat. Ins. Co. v. Craddock*, 109 S.W.2d 165 (Tex.Comm'n App.1937, opinion adopted). The *Craddock* case dealt with a disability insurance policy that did not cover gunshot wounds. The insured sought benefits for injury from a pistol shot. He contended waiver, because he had advised the insurer of the nature of his accident and had been paid eleven weeks of indemnity by the insurer. The commission held that this conduct would not broaden the policy so as to cover this type of loss. In the case of *Great American Reserve Ins. Co. v. Mitchell*, 335 S.W. 2d 707 (Tex.Civ.App.–San Antonio 1960, writ ref'd), the court held that even though the insurance company had within its own

records a list of the birthdays of the employees, and thus knew the age of Mitchell, and even though the company accepted premiums for eight months after Mitchell had reached the termination age of sixty-five, waiver and estoppel would not extend coverage to Mitchell.

On the other hand, in the case of *Farmers Mutual Protective Association of Texas v. Pack*, 465 S.W.2d 228 (Tex.Civ.App.–Austin 1971, writ ref'd n.r.e.), the court held that acts of the insurer's agents in accepting and retaining insurance premiums over more than a year's period with full knowledge that the insured had moved the insured property without obtaining a new appraisal constituted a waiver on the insurer's part of any alleged deficiency in compliance on the part of the insured. Estoppel was applied to a workers' compensation insurance policy in *Superior Insurance Co. v. Kling*, 321 S.W.2d 151 (Tex.Civ. App.–Waco), *aff'd*, 160 Tex. 155, 327 S.W. 2d 422 (1959).

■ The case that is closest to the fact situation in the present case is *American Fire & Casualty Co. v. Eastham*, 185 F.2d 729 (5th Cir.1950). In that case, the fire insurance policy contained a provision that it would be void if the house became vacant for more than thirty consecutive days. The court found that the insurer had waived the forfeiture clause by retaining the premiums and failing to cancel the policy even though it had notice of the vacancy long before the fire. The court stated:

> It is well settled under Texas law that where the insurer acquires full knowledge of facts sufficient to work a forfeiture of its policy, and does not cancel the policy but retains the unearned premium, it waives the condition and is estopped to claim a forfeiture.

In the present case, we find that Moriarty is not seeking to create a new and different contract with respect to risk coverage, but rather is seeking to avoid a forfeiture of

**3.** The terms *estoppel* and *waiver* are often used interchangeably by the courts. The present case deals with estoppel, because there is no allega-

tion that Aetna intentionally relinquished its defense. This would be a necessary element of waiver.

coverage on the basis that she was not residing in the house at the time of the fire. Although the policy does not use the word *forfeiture*, the loss of coverage is tantamount to a forfeiture.[4] Therefore, waiver and estoppel operate to avoid this forfeiture.

Aetna contends that issue number five (the damage issue) was a comment on the weight of the evidence because it did not tell the jury that it could answer "none." At the end of special issue five, the following language appears: "Answer in dollars and cents, if any, or 'none.'" This point of error is overruled.

■ Aetna further argues that the trial court erred in submitting the charge on damages, because it did not limit the jury to property loss or policy limits. The evidence indicated that the amount of the policy was $35,000. The amount of damages was less than that amount; therefore, Aetna was not damaged by the failure to instruct on policy limits and such failure does not constitute reversible error.

■ The ordinary measure of damages for the destruction of the house is the difference in value before and after its destruction. *Pacific Express Co. v. Lasker Real Estate Ass'n*, 81 Tex. 81, 16 S.W. 792 (1891). If destruction is partial, the damage amount is the cost of rebuilding. *Lasker, supra.* The general rule is that recovery for fire damages should correspond to the actual loss sustained by the insured in view of all the circumstances in the case. *Crisp v. Security National Insurance Co.*, 369 S.W.2d 326, 328 (Tex. 1963).

■ Moriarty testified without objection that in her opinion the house was worth about $27,000 before the fire, and that it was unrepairable. Aetna's claim form stated that the house was repairable

for approximately $17,000. The determination of value is within the province of the jury, and the finding of $24,000 damages is within the range established by the evidence. *Centerville Ind. Sch. Dist. of Leon Co. v. Wingfield*, 450 S.W.2d 946 (Tex.Civ. App.–Waco 1970, no writ).

Aetna further contends that there was insufficient evidence or no evidence of conduct by Union Bank that would create an agency. The jury was given the following instruction pertaining to agency:

By 'agent,' as used herein, is meant any person or company who receives, collects or transmits any premium of insurance or does or performs any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than himself.

Aetna does not complain about this instruction on appeal, and the only objection made to this portion of the charge in the trial court was that it did not include more of the statute from which this definition is taken. The excerpt from Tex.Ins.Code Ann. art. 21.02 (Vernon 1981)[5] that was submitted by Aetna to the trial court as a jury instruction reads as follows:

[A]ny person or company who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself an application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or

---

4. The language of the policy applicable to fire coverage and requiring that the insured reside in the house to have coverage is as follows: "COVERAGE A—DWELLING, as described on Page 1 of this policy, *while occupied by the Insured principally for dwelling purposes.*" (Emphasis added.)

5. This statute was amended in 1985 (after the occurrence of the fire in the present case) adding the following language: "This article does not authorize an agent to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy."

do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, *whether any such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person.* (Emphasis added.)

In the recent case of *Horne v. Charter National Insurance Co.,* 614 S.W.2d 182 (Tex.Civ.App.–Fort Worth 1981, writ ref'd n.r.e.), the court points to language contained in Article 21.02 that states, "as far as relates (sic) to all the liabilities, duties, requirements and penalties set forth in this chapter." The court in *Horne* stated, in what appears to be dictum, that this article defines *agent* for purposes of certification, etc., under Chapter 21 of the Insurance Code and is not dispositive as to whom an agent represents. However, this article (which was previously Tex.Rev.Civ.Stat. Ann. art. 5056) has been applied to make an employer the insurer's agent when he deducted the amount of premiums from employees' salaries and paid them to the insurance company. *Aetna Life Insurance Co. v. Tipps,* 132 Tex. 213, 121 S.W.2d 324 (1938); *General American Life Insurance Co. v. Gant,* 119 S.W.2d 693 (Tex.Civ.App.–Austin 1938, writ dism'd).

■ In the present case, Aetna has not challenged the definition of the agency on appeal. There is evidence in the record that Union Bank collected the premiums for the insurance and then submitted it to the insurance company through the local agency. Under the definition given to the jury, this is sufficient to establish agency, and because Aetna has not objected to the definition, it must be applied in evaluating the jury's finding. No issue concerning the scope of the agency has been raised.

Aetna has also complained that under the definition Union Bank would not be an agent, because it was purchasing a policy for its principal as the mortgage holder and the language of the definition says, "other than for himself." The evidence shows that the amount owed on the mortgage was a relatively small amount compared to the interest owned by Moriarty. The fact that the premiums also covered mortgagee's interest does not show that the full amount of the premiums were paid for the mortgagee's benefit.

■ Aetna further contends that one of its subsidiaries, rather than Aetna, is the real insurer. It bases this argument on language on the second page of the policy which states, "This insurance policy is produced by" and then some language too dim to read on the copy supplied to this Court. On the front page of the policy in bold letters, the Aetna Casualty & Surety Company trademark appears along with additional bold letters stating, "The Aetna Casualty & Surety Company" and following that "The Standard Fire Insurance Company." On page two of the policy, the Aetna trademark again appears in large letters declaring "Aetna Life & Casualty." Next to that in large print: "Texas Standard Homeowners Policy." Nowhere else does the name of the insurance company appear other than to refer to it as "the Company."[6] No explanation has been given as to what is meant by the words "produced by." In addition to Aetna's name and trademark appearing on the policy, the back of a check (introduced by Moriarty) paying the premium is endorsed to "Aetna Life Insurance Co." and "Aetna Casualty Co." We find sufficient evidence to show that Aetna Casualty & Surety Company is the insurer in this case.

Furthermore, Aetna did not raise this issue in its pleadings. The policy has the printed signatures of Stephen B. Middlebrook, Secretary and William O. Bailey as President, on the last page of the document, but no corporate name appears on the last page. Coupled with the appearance of Aetna's name on the first two

---

**6.** Aetna contends that the policy was issued by Automobile Insurance Company of Hartford, Connecticut, an affiliate company. However, we have no legible evidence referring to that company.

pages of the policy (as mentioned above), anyone examining the document would be led to believe that the named officers were the duly authorized officers of Aetna. In a situation such as this, when a party contends that the proper party is one of its subsidiaries, this issue should be raised by verified pleadings pursuant to Tex.R.Civ.P. 93(7).

■ Moriarty contends in her single cross-point that attorney's fees should have been awarded to her. The parties agreed prior to submission of the charge to the jury that the issue of attorney's fees would be submitted to the court. The court found in its judgment that the appropriate attorney's fees would be $11,000. This is based upon the attorney's fees being $3,500 if the case had not been appealed. If the case were to be appealed to the Court of Appeals, the total attorney's fees would be $6,000. If application for writ of error to the Texas Supreme Court were to be filed, the attorney's fees will be $8,500. The $11,000 figure was apparently to be awarded if the case is heard by the Texas Supreme Court. The trial court, however, specifically stated in the judgment that Moriarty was not entitled to recover attorney's fees.

The recovery awarded against Aetna under the doctrine of estoppel is necessarily based upon the contract of insurance. Attorney's fees are recoverable after a successful suit against an insurer on a contract of insurance. *Members Insurance Co. v. English,* 706 S.W.2d 779 (Tex.App.–San Antonio 1986, no writ); *Commonwealth Lloyd's Insurance Co. v. Thomas,* 678 S.W.2d 278 (Tex.App.–Fort Worth 1984, writ ref'd n.r.e.); *Prudential Insurance Co. of America v. Burke,* 614 S.W.2d 847 (Tex.Civ.App.–Texarkana), *writ ref'd n.r.e. per curiam,* 621 S.W.2d 596 (Tex.1981).

We find that attorney's fees incurred in pursuing this claim based upon a contract of insurance are recoverable, and in accordance with the trial court's determinations, this will be in the amount of $6,000 at this point in the proceedings.

The judgment against Union National Bank of Little Rock is hereby reversed and dismissed. The judgment against Aetna Casualty & Surety Company is hereby affirmed as modified by adding the recovery of attorney's fees as herein set forth.

CORNELIUS, Chief Justice, concurring.

I concur in the disposition of this case, but as to Aetna Insurance Company I concur only because it has not properly complained of what I believe was an erroneous definition of agency given in the court's charge.

The definition of agency given in the charge was obviously based upon Tex.Ins. Code Ann. art. 21.02 (Vernon Supp.1988).[1]

1. At the time the cause of action arose, Article 21.02 provided:

Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other state or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. The provisions of this subchapter shall not apply to the citizens of this State who arbitrate in the adjustment of losses between the insurers and insured, nor to the adjustment of particular or general average losses of vessels or cargoes by marine adjusters who had paid an occupation tax of Two Hundred ($200.00) Dollars for the year in which the adjustment is made, nor to practicing attorneys at law in the State of Texas, acting in the regular transaction of their business as such attorneys at law, and who are not local agents, nor acting as adjusters for any insurance company. Any person who shall

In my judgment, that statute does not cover the situation we have here—where a person simply mails or delivers another person's insurance premium to the insurance company either for his own benefit (as in the case of a mortgagee who wants to protect his collateral) or as an accommodation to the insured.

The statute was enacted in order to make certain persons and companies agents for purposes of certification and licensing and in order to subject them to penalties provided by the Insurance Code for various prohibited acts. It was not intended to generally make persons agents of insurance companies for notice or other purposes. Indeed, the statute expressly provides that it makes the designated persons or companies agents "as far as relates to all the liabilities, duties, requirements and penalties *set forth in this chapter*" (emphasis added). The chapter referred to is Chapter 21 of the Insurance Code which deals with certification and qualification of insurance companies, licensing of agents, and prohibited acts such as misrepresentation of policy provisions. Nowhere does the chapter purport to deal with the question of general agency for the purposes of notice. *See Horne v. Charter National Ins. Co.,* 614 S.W.2d 182 (Tex.Civ.App.–Fort Worth 1981, writ ref'd n.r.e.); *cf. Guthrie v. Republic National Ins. Co.,* 682 S.W.2d 634 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Don Chapman Motors Sales v. National Savings Ins. Co.,* 626 S.W.2d 592 (Tex.App.–Austin 1981, writ ref'd n.r.e.).

Interpreting Article 21.02 as making a person who "transmits" a premium to an insurance company the general agent of that company would produce unreasonable and unfair results. Under such an interpretation a policyholder could simply have an acquaintance or confederate mail his premiums to the insurance company, and thereby make such person the company's agent. Without having any relationship with the company, such an "agent" could bind the company as to notices or actions

for purposes of estoppel or other equitable and legal remedies. Agency is ordinarily a question of fact, depending on whether a person has, by express or implied agreement, been appointed or designated to act on behalf of another person. *Foundation Reserve Insurance Co. v. Wesson,* 447 S.W.2d 436 (Tex.Civ.App.–Dallas 1969, writ ref'd); 3 Tex.Jur.3d *Agency* § 13 (1980). While the Legislature, within the constraints of due process, may create an agency relationship by law without requiring the parties' consent, I do not believe the statute in question can be reasonably interpreted as expressing a legislative intent to create a broad agency relationship as defined in the court's charge. I believe Article 21.02 is limited to the specific provisions and penalties of Chapter 21 of the Insurance Code. Indeed, the addition of the language, "This article does not authorize an agent to orally, in writing, or otherwise alter, amend, modify, waive, or change a term or condition of an insurance policy or application for an insurance policy" to the statute by the 1985 amendment seems to confirm that view of the legislative intent. If the cases of *Aetna Insurance Company v. Tipps,* 132 Tex. 213, 121 S.W.2d 324 (1938), and *General American Life Ins. Co. v. Gant,* 119 S.W.2d 693 (Tex. Civ.App.–Austin 1938, writ dism'd), can be construed to hold otherwise, I believe they were wrongly decided.

In spite of what I believe to be an erroneous and over-broad definition of agency in the court's charge, I concur in the judgment because Aetna did not object to the definition in the trial court for the correct reason, nor has it complained at all of the definition in this appeal. It is thus in the position of having waived the error.

do any of the acts mentioned in this article for or on behalf of any insurance company without such company having first complied with the requirements of the laws of this

State, shall be personally liable to the holder of any policy of insurance in respect of which such act was done for any loss covered by the same.