GRAMERCY INSURANCE
CO., Appellant,

v.

ARCADIA FINANCIAL LTD., Appellee.

No. 14–99–00373–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 26, 2000.

Rehearing Overruled Dec. 7, 2000.

George Dennis Sullivan, William O. Holston, Dallas, for appellants.

Donald L. Turbyfill, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## OPINION

HUDSON, Justice.

Gramercy Insurance Co. appeals from a judgment granted in favor of Arcadia Financial Ltd. in Arcadia's suit seeking recovery under a statutory motor-vehicle dealer bond. Arcadia also appeals from the trial court's failure to grant its request for attorney fees. We have determined that a portion of Arcadia's claim was based on the failure to deliver good title, that a portion was not based on such a failure, and that Arcadia's complaint about attorney's fees is moot. We, therefore, reverse and render in part and reverse and remand in part for further proceedings in accordance with this opinion.

### *Background*

The relevant facts are not disputed. Arcadia was a financing company that helped finance car purchases for customers of First Financial–Fleet Lease Corp., a used-car dealer. Customers would enter into retail installment contracts with First Financial, called customer obligations. First Financial, in turn, would assign the contracts to Arcadia. In exchange for the assignment, Arcadia would compensate First Financial according to the terms of a Master Dealer Agreement between the First Financial and Arcadia.

Pursuant to the Master Dealer Agreement, however, under certain circumstances, Arcadia could require First Financial to repurchase installment contracts. Arcadia could require First Financial to repurchase a contract (1) where the car buyer defaulted; (2) where the car buyer could assert a valid claim or defense against Arcadia that the buyer could also assert against First Financial; (3) where First Financial did anything to affect the enforceability of the contract; or (4) where any warranty made by First Financial proved to be untrue. Among First Financial's warranties was a warranty that the contract evidenced a valid first lien or security interest on the car and that the lien or interest had been perfected in Arcadia's name.

At issue are two contracts First Financial assigned to Arcadia—the Dovai/Washington contract and the Bratton contract. As for the Dovai contract, First Financial sold a car to Odell Dovai, also known as Odell Washington, and then assigned the contract to Arcadia. Subsequently, Dovai sued First Financial for fraud and violations of the Deceptive Trade Practices Act, alleging that First Financial had sold the car with an altered odometer. Dovai was successful in his suit against First Financial and subsequently refused to make payments on the contract held by Arcadia. When Arcadia asked First Financial to repurchase the contract, it refused.

As to the Bratton contract, the Brattons purchased a car from First Financial for approximately $19,300, using a combination of cash, trade-in, and an installment contract. Although First Financial assigned the contract to Arcadia, it failed to deliver the certificate of title to the Brattons. After the Brattons complained to Arcadia of this failure, Arcadia received a letter from BMW Preventive Maintenance demanding payment of $16,147 owed to BMW by First Financial for its acquisition of the Bratton vehicle. Arcadia paid BMW $16,000, obtained clear title, and registered the title in the Brattons' name.

The Brattons ultimately paid off the contract held by Arcadia. Arcadia nevertheless asked First Financial to repurchase the Bratton contract. First Financial refused.

After First Financial refused to repurchase either the Dovai or the Bratton contracts, Arcadia sued First Financial for its failure to repurchase the contracts and received a default judgment in the amount of $27,076.46 in principal, together with $1,250 in attorney fees and post-judgment interest at the rate of 10% from the date of the signing of the judgment until paid.

As a motor vehicle dealer, First Financial was required by statute to obtain a $25,000 surety bond from an approved surety to guarantee (1) its payment of all valid bank drafts drawn by it to buy motor vehicles and (2) the delivery of good title for all motor vehicles sold by it. *See* Tex. Trans.Code Ann. § 503.033 (Vernon 1999). Thus, once it had obtained its default judgment, Arcadia advised First Financial's surety, Gramercy Insurance Co., of the judgment and demanded payment under the provisions of section 503.033 of the Transportation Code. When Gramercy refused, Arcadia filed suit against Gramercy, relying on the default judgment Arcadia had received against First Financial in connection with the Dovai and Bratton contracts. After a bench trial, the court entered judgment in favor of Arcadia, awarding to it $33,236.37, as well as post-judgment interest. The court denied Arcadia's request for attorney fees.

### Bond

In its first issue, Gramercy questions whether it is liable to Arcadia pursuant to section 503.033 of the Transportation Code. Under this provision of the code, recovery may be made against the surety for the amount (1) of the bank draft drawn by the dealer to purchase the vehicle or (2) paid to the dealer for a vehicle for which the dealer was unable to deliver good title. *See id.* Here, Gramercy contends Arcadia's judgment does not arise pursuant to

the statute, but from a violation of the Master Dealer Agreement, namely, First Financial's failure to repurchase the installment contracts.

In a related issue, Gramercy claims the judgment should be reversed because its liability was not based on a statutory condition, but rather upon (1) damages resulting from First Financial's failure to transfer good title to two motor vehicles in which Arcadia had only a security interest; (2) implied terms or conditions of the Master Dealer Agreement to require the dealer to transfer title to the motor vehicles to Arcadia; (3) a breach of the Master Dealer Agreement, namely, the failure to record a lien; and (4) damages relating to an act not specified or covered by the statute or the bond.

■ Statutory construction is a question of law which we review de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). When interpreting a statute, we try to give effect to legislative intent. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex.1999). We look first to the plain and common meanings of the statute's words. *See id.* If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See id.*

■ A licensed car dealer must have a $25,000 security bond conditioned on the payment by the dealer of all valid bank drafts, including checks, drawn by the dealer to buy motor vehicles and the transfer by the dealer of good title to each motor vehicle the dealer offers for sale. *See* Tex.Transp.Code Ann. § 503.033(a), (b)(2) (Vernon 1999). A "person" may recover against a surety bond if the person obtains against a dealer a "judgment assessing damages and reasonable attorney fees *based on an act or omission on which the bond is conditioned.*" *See* Tex.Trans. Code Ann. § 503.033(d) (Vernon 1999) (emphasis added). When a bond is statutorily

mandated, the statute is necessarily part of the bond and, thus, controlling. *See Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex.1992). The liability imposed on a surety is limited to the amount of the valid bank drafts, including checks, drawn by the dealer to buy motor vehicles or paid to the dealer for a motor vehicle for which the ·dealer did not deliver good title and attorney fees that are incurred in the recovery of the judgment and that are reasonable in relation to the work performed. *See* TEX.TRANS.CODE ANN. § 503.033(e) (Vernon 1999). The $25,000 bond issued by Gramercy tracked the statutory language.[1]

### *Bratton Contract*

■ Gramercy contends it is not liable on the "Bratton contract" because the statute was intended to protect only consumers. Thus, only a consumer, or individual to whom good title was to be delivered, has standing to bring a claim under the statute. In a related argument, Gramercy claims its liability is limited by statute to the amount paid to the dealer for a motor vehicle for which the dealer failed to deliver good title. Gramercy asserts there is no evidence Arcadia paid anything to First Financial for the motor vehicle in question; rather, Arcadia purchased an installment contract, not a motor vehicle. Thus, Gramery argues that Arcadia is, at most, a lien-holder and cannot recover under the statute.

The statute provides that any "person" may recover against a surety bond if that person obtains a judgment against a dealer assessing damages and reasonable attorney fees "based on an act or omission on which the bond is conditioned." *See id.*[2] Whether such persons must also have di-

rectly purchased vehicles from dealers appears to be a question of first impression.

The Utah Supreme Court, however, has construed a similar auto-dealer bonding statute. *See Lawrence v. Ward*, 5 Utah 2d 257, 300 P.2d 619, 621 (1956). The Utah statute gave a right of action against a motor-vehicle dealer and its surety to "any person" who suffered "any loss or damage by reason of fraud, fraudulent representation or violation of any of the provisions" of the bonding act. *Id.* The bonding company argued, as Gramercy does here, that the act protected only consumers, not financing companies doing business with the dealer. The bonding company reasoned that consumers, who are arguably less sophisticated than a dealer in vehicle-related matters, might need greater protection. An experienced financing company, however, would need no such protection. *See id.* The court rejected the argument, determining that the statute was intended to protect "all persons" doing business with a motor-vehicle dealer. *See id.* at 622.

■ Likewise, we find that section 503.033 is not facially limited to consumers in its application. Moreover, while the statute limits the surety's liability to the "amount . . . paid to the dealer for a motor vehicle for which the dealer did not deliver good title," the statute does not require that the person who obtained the judgment against the dealer be the same person who paid the dealer for delivery of good title, i.e., the consumer. *See* TEX. TRANS.CODE ANN. § 503.033(e) (Vernon 1999). The Legislature enacted the surety liability cap after the decision in *Geters*, where a surety was found liable for more than rescission damages arising from the principal's actions. *See Geters*, 834 S.W.2d at 49–50. Thus, the liability limitation was

---

1. The bond provided as follows:
   THE CONDITION OF THIS OBLIGATION is such that if, during the effective period of this obligation, the Principal [1st Financial] shall pay all valid bank drafts, including checks, drawn by the Principal for the purchase of motor vehicles and transfer good title

to each motor vehicle that the Principal purports to sell, then this obligation shall be void; otherwise to remain in full force and effect.

2. The term "person" includes corporations. *See* TEX.GOV'T CODE ANN. § 311.005(2) (Vernon 1998).

added to prevent the surety from being held liable for consequential damages. Nothing in the statute's language limits the statute's application to the direct consumer or purchaser of the vehicle.

Here, the record shows the Brattons paid approximately $19,300 for their car, using a combination of cash, trade-in, and debt. When the Brattons failed to get the certificate of title from First Financial, Arcadia intervened, paid $16,000 to BMW to clear the title, and transferred the title to the Brattons. Thereafter, Arcadia sought $16,000 from the surety for its claim on a judgment "based on" First Financial's failure to deliver good title. While Arcadia paid the $16,000 to clear title on behalf of the Brattons, we find it is nevertheless protected by the statute.

It is common knowledge that car buyers do not ordinarily purchase vehicles with cash, but with a combination of cash, trade-in, and debt. The Legislature has authorized buyers to recover rescission damages for a dealer's failure to deliver good title. We surmise the Legislature also intended that other parties be permitted to recover against the bond when they seek to clear title on behalf of the buyer. Had the Legislature wished to limit bond claimants to consumers or motor-vehicle purchasers, it could have expressly done so. Accordingly, we do not construe the statute to limit its protection only to consumers.

■ Gramercy further contends that Arcadia's claims against First Financial are for breach of the Master Dealer Agreement and that such breach-of-contract claims will not support a claim against the surety bond. It asserts that a claim against a bond must be conditioned only upon failure to pay checks or drafts or failure to deliver good title. *See* TEX. TRANS.CODE ANN. § 503.033(b) (Vernon 1999).

■ Although Arcadia sued First Financial for breach of the dealer agreement (technically for failing to repurchase the installment contract), the record demonstrates the substance of Arcadia's complaint against First Financial was its failure to deliver good title to the Brattons. The statute permits a claim against a surety that is "based on" failure to deliver good title. *See* TEX.TRANS.CODE ANN. § 503.033(d) (Vernon 1999). A claim against a dealership for breach of contract, where failure to deliver good title constitutes the breach, will support a claim against the surety for the dealer's failure to deliver good title. *See Geters*, 834 S.W.2d at 49. Thus, we find Arcadia's default judgment from its breach-of-contract suit against the dealer and the trial proof showing that the dealer failed to deliver good title will support a claim against the surety.

■ Finally, Gramercy argues that the proof and pleadings supporting the default judgment against the dealer do not show that the default judgment was "based on" failure to deliver good title. A judgment obtained against a principal creates only a prima facie case for liability against the surety who was not made a party or given an opportunity to defend the suit in which the judgment was obtained. *See Browne v. French*, 3 Tex.Civ.App. 445, 452, 22 S.W. 581, 583–84 (1893). The surety, when sought to be made liable by the judgment creditor, may interpose any valid defense that could have defeated the plaintiff's case at the time the initial judgment was obtained. *See id.* at 584. *See also Howze v. Surety Corp. of Am.*, 564 S.W.2d 834, 838 (Tex.Civ.App.—Austin 1978), *rev'd on other grounds*, 584 S.W.2d 263 (Tex. 1979).

■ Here, as to the Bratton contract, the default judgment against the dealer is supported by the affidavit of T.R. Dickerson, Arcadia's custodian of records, in which he avers that the dealer owed Arcadia the "sum of $16,000 as and for the loss to Arcadia due to a compromise or settlement necessary *to obtain clear title* to the Bratton Vehicle." (emphasis added.) We

find the default judgment constitutes prima facie proof of Gramercy's liability under the bond. At trial on its bond liability, Gramercy was entitled to assert any available defense. The proof developed at trial shows that Arcadia's default judgment against First Financial and Arcadia's claim against the bond were "based on" First Financial's failure to deliver good title to the Brattons. Thus the proof from the default judgment and the surety's trial supports Arcadia's bond claims as to the Bratton contract.

Accordingly, we find under the facts presented here that Arcadia was entitled to make a claim of $16,000, plus attorney fees, against Gramercy on the basis of its default judgment against First Financial where the judgment was based on a breach-of-contract suit for failure to deliver good title to the Brattons.

### Dovai Contract

■ Dovai sued First Financial for violation of the Deceptive Trade Practices Act, alleging it sold a motor vehicle with an altered odometer. Arcadia contends, however, that the core of its Dovai complaint is First Financial's failure to deliver good title. It claims the Transportation Code requires a dealer to provide the buyer a written disclosure of the vehicle's odometer reading at the time of sale. *See* Tex.Trans.Code Ann. § 501.072 (Vernon 1999). The code provides that a sale made in violation this provision is void and title does not pass until the requirements of the chapter are met. *See* Tex.Transp.Code Ann. § 501.073 (Vernon 1999). Thus, Arcadia urges us to hold that because (1) an accurate milage disclosure is required and (2) First Financial misrepresented the milage on the Dovai vehicle, good title did not pass and Dovai's complaint is one of failure to deliver good title.

■ The legislative intent of the Certificate of Title Act was to lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens, not to prevent sales and transfers of interest in motor vehicles. *See Cash v. Lebowitz,* 734 S.W.2d 396, 398 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Non-compliance with the act does not override the clear showing of a valid and complete transfer of ownership of an automobile. *See Najarian v. David Taylor Cadillac,* 705 S.W.2d 809, 812 (Tex.App.—Houston [1st Dist.] 1986, no writ). Even in the face of non-compliance, the sale of a vehicle without the transfer of a title certificate is valid "as between the parties, when the purposes of the Certificate of Title Act are not defeated, although the Act declares that the non-transfer of such certificates renders the sale void." *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.,* 465 S.W.2d 933, 937 (Tex.1971).

Here, the purpose of the act is not fulfilled by finding that First Financial failed to deliver good title to Dovai. The substance of Dovai's complaint against the dealer was not failure to deliver good title, but fraud and violation of the Deceptive Trade Practices Act for selling a vehicle with an altered odometer. Moreover, the record fails to show that Arcadia's judgment against First Financial was "based on" a statutory condition, that is, failure to honor a draft or check or failure to deliver good title. Thus, the Dovai portion of the default judgment against the dealer will not support a claim against Gramercy. Accordingly, the trial court erred by granting judgment to Arcadia in connection with the contract.

We therefore reverse that portion of the judgment relating to the Dovai contract and render that Arcadia take nothing in that regard. While we find that Gramercy may be liable under the Bratton contract, when liability is contested, we may not reverse and remand solely on the issue of unliquidated damages. *See* Tex.R.App.P. 44.1(b); *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996). We must, therefore, reverse the trial court's judgment in connection with the Bratton contract and remand for further proceedings

in accordance with this opinion. We sustain Gramercy's first and second issues in part.

### Damages in Excess of Bond Amount

The trial court granted Arcadia judgment in the amount of $33,236 .37 and post-judgment interest at the rate of 10% from the date of judgment until paid. In its third issue, Gramercy contends the judgment should be reversed or modified because section 503.003(f) of the Transportation Code limits its liability to $25,000, the face value of the bond.

We have found error in the judgment relating to the Dovai contract. On remand, a subsequent damage award, if any, relating to the Bratton contract, plus attorney fees, may fall below the face value of the bond. Accordingly, we overrule Gramercy's third issue as moot.

### Attorney Fees

The trial court denied Arcadia's request for attorney fees in connection with its suit against Gramercy on the motor-vehicle dealer bond. In a single cross-point, Arcadia contends the trial court erred. As to the Dovai contract, Gramercy was not liable on the bond. The trial court, therefore, did not err in denying attorney fees with respect to the Dovai contract. As to the Bratton contract, we are remanding both the issues of liability and damages to the trial court. Accordingly, the question of attorney fees as to that portion of the judgment is moot. We overrule Arcadia's crosspoint.

### Conclusion

We sustain Gramercy's first and second appellate issues in part, overrule the third issue as moot, and overrule Arcadia's crosspoint regarding attorney fees. With regard to the Dovai contract, we reverse the judgment of the court below and render judgment in favor of Gramercy. With regard to the Bratton contract, the trial court did not err in finding Gramercy liable, but because we may not remand on the issue of damages alone, we reverse and remand that portion of the judgment for further proceedings in accordance with this opinion.