TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00714-CV







Gramercy Insurance Company/Arcadia Financial Ltd., Appellants


v.



Arcadia Financial Ltd./Gramercy Insurance Company, Appellees






FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 248,092, HONORABLE ORLINDA L. NARANJO, JUDGE PRESIDING







 Appellant Gramercy Insurance Company ("Gramercy") appeals from a county-court-at-law judgment in favor of appellee, Arcadia Financial Ltd. ("Arcadia"). Arcadia sued Gramercy
seeking recovery under a statutory motor-vehicle-dealer bond after Arcadia obtained judgment
against the bond's principal, Car One Finance, Inc. ("Car One"), in federal district court. We will
modify and, as modified, affirm the county court at law's judgment.


FACTUAL AND PROCEDURAL BACKGROUND Arcadia provides purchase-money financing to retail customers of automobile dealers.
Car One is a licensed used car dealer. In order to obtain its license to sell vehicles, Car One
purchased a $25,000 surety bond from Gramercy. See Tex. Transp. Code Ann. § 503.033 (West
1999). The bond, as required by statute, was conditioned, in relevant part, on Car One's "transfer
. . . of good title to each motor vehicle [Car One] offers for sale." Id. § 503.033(b)(2)(B).

 Car One and Arcadia were parties to two contracts. They refer to the first contract
as the Master Consignment Agreement ("MCA"). Under the MCA, whenever Arcadia repossessed
a vehicle, Car One would take the vehicle on consignment and attempt to sell it from Car One's lot. 
Arcadia retained a purchase-money security interest in the consigned vehicles. The MCA required
Car One, among other things, to pay all taxes and license fees required upon the sale of a consigned
vehicle. The MCA also provided that Arcadia would pay Car One a fixed fee for each consigned
car sold.

 The parties refer to the second contract as the Master Dealer Agreement ("MDA"). 
Under the MDA, Arcadia agreed to purchase the retail installment sales contract from Car One
whenever one of the vehicles it had repossessed was resold to a third party. The MDA also obligated
Car One to repurchase the retail installment sales contract from Arcadia whenever "Car One [took]
any action or fail[ed] to take any action of any kind which affect[ed] the validity or enforceability
of the [installment sales contract] in the reasonable judgment of Arcadia." The record contains no
evidence that Arcadia purchased automobiles from or sold automobiles to Car One.

 The controversy began when Car One allegedly defaced or attempted to alter titles
to vehicles that it possessed on consignment by virtue of the MCA. According to Gary Condensa,
one of Arcadia's buying center managers, Car One failed to use the proceeds from the sale of
consigned vehicles to pay taxes on the vehicles and transfer title to the consumers who had
purchased them. When Arcadia discovered Car One's failure, Arcadia "made demand on [Car One]
to get the titles properly transferred and into the customer's name." In response, Car One "altered"
the titles and returned them to Arcadia. The record is unclear as to the nature of the alterations. 
Arcadia then attempted to exercise its option under the MDA to force Car One to repurchase the
installment sales contracts from Arcadia, but Car One refused. As a result, Arcadia expended
$19,912.92 of its own funds to pay taxes on and transfer titles to the consigned vehicles that Car One
had sold.

 Arcadia sued Car One in federal district court to recover damages sustained as a result
of Car One's alleged breaches of both the MCA and MDA. In its suit, Arcadia alleged that Car One
breached the MCA by failing to transfer good title to the vehicles it offered for sale, thus impairing
Arcadia's ability to perfect its purchase-money security interests in the consigned vehicles. Arcadia
further alleged that Car One breached the MDA by refusing to repurchase at least twenty-three retail
installment sales contracts that had been tainted by Car One's failure to deliver good title. The
federal court found that Arcadia had suffered actual damages "resulting from breach of contract [the
MDA] of $62,838.62" and $4500 "as attorneys fees and related expenses," for a total judgment in
favor of Arcadia by virtue of Car One's breach of the MDA of $67,339.62. (1) The court awarded 
Arcadia an additional $19,912.92 "by way of expenses by reason of the wrongful conduct of . . . Car
One" under the MCA. The federal court rendered a default judgment consistent with its findings in
favor of Arcadia. (2) Both the federal court's final judgment and its order signed the same day, which
contains the court's findings, consolidate the court's attorney's fees award with the damages assessed
against Car One for breach of the MDA. We therefore presume that the federal court did not intend
that any part of the attorney's fees be attributable to the damages assessed by virtue of Car One's
wrongful conduct under the MCA. See Arcadia Fin. Ltd. v. Car One Fin., Inc., No. 4:98-CV-302-A
(N.D. Tex. Dec. 28, 1998).

 Arcadia notified Gramercy, as Car One's surety, of the federal-court judgment and
demanded payment pursuant to the statutory bond. See Tex. Transp. Code Ann. § 503.033(d). When
Gramercy refused to pay, Arcadia brought the present state-court action against Gramercy. 
Gramercy denied liability on the ground that Arcadia's damages arose from Car One's breach of
contract, not from a violation of the transportation code. The county court at law entered judgment
against Gramercy for the full face value of the bond plus pre- and postjudgment interest but did not
award attorney's fees. Gramercy appeals by two issues. Arcadia asserts that the county court at law
erred by refusing to award attorney's fees for its successful action against Gramercy.


DISCUSSION


Standard of Review

 Generally, matters of statutory construction are questions of law. Havlen v.
McDougall, 22 S.W.3d 343, 345 (Tex. 2000). Whether a statute provides a particular remedy is a
question for the court. Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex. 1999). 
Statutory construction inquiries must begin by looking to the plain and common meaning of the
statute's words. Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex.
1998). If the disputed statute is clear and unambiguous, courts should give the statute its common
meaning. Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). Our objective when we
construe a statute is to determine and give effect to the legislature's intent. Liberty Mut. Ins. Co.,
966 S.W.2d at 484. "To ascertain legislative intent, we must look to the statute as a whole and not
to its isolated provisions." Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985); Texas Dep't of
Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 283 (Tex. App.--Austin 2000, pet.
denied).


The Transportation Code

 The Texas Department of Transportation may not issue or renew a motor-vehicle-dealer license without proof that the dealer has obtained a $25,000 surety bond that is conditioned
on (1) payment by the dealer of all valid bank drafts drawn by the dealer to purchase motor vehicles
and (2) transfer by the dealer of good title to each motor vehicle the dealer offers for sale. See Tex.
Transp. Code Ann. § 503.033(a), (b)(2). A "person" may recover against a surety bond if the person
obtains a judgment against a licensed motor-vehicle dealer that "assess[es] damages and reasonable
attorney's fees based on an act or omission on which the bond is conditioned." Id. § 503.033(d). 
The liability of a surety is limited to the amount of the valid bank drafts drawn by the dealer to buy
motor vehicles or paid to the dealer for a motor vehicle for which the dealer did not deliver good
title. Id. § 503.033(e)(1) (emphasis added). A surety may also be liable for attorney's fees "that are
reasonable in relation to the work performed" incurred in the recovery of the judgment against the
dealer. Id. § 503.033(e)(2). However, the liability of a surety may not exceed the face value of the
surety bond. Id. § 503.033(f).

 A surety's liability is determined by the language of the bond itself. "A statute
mandating a bond, such as section 503.033, is made a part of the bond and is controlling." Lawyers
Sur. Corp. v. Riverbend Bank, N.A., 966 S.W.2d 182, 187 (Tex. App.--Fort Worth 1998, no pet.)
(citing Geters v. Eagle Ins. Co., 834 S.W.2d 49, 50 (Tex. 1992); Howze v. Surety Corp. of Am., 584
S.W.2d 263, 266 (Tex. 1979)).


Breach of the MCA

 By its first issue, Gramercy argues that it is not liable to Arcadia for the value of the
bond because Arcadia obtained judgment in its suit against Car One on a theory "sounding in tort
of conversion under the MCA" and "from the terms and breach of the MCA contract." Gramercy
asserts that the $19,912.92 portion of the federal-court judgment was not based on one of the
conditions for recovery allowed by section 503.033 of the transportation code, but rather on Car
One's failure to use the proceeds from the sale of consigned automobiles to pay vehicle taxes and
title fees as required by the MCA. Thus, the portion of Arcadia's judgment against Car One that
arose from Car One's breach of the MCA does not fall under the statute because it was not "based
on an act or omission on which the bond is conditioned." See Tex. Transp. Code Ann. § 503.033(d).

 We disagree. To satisfy the transportation code, a bond "must be conditioned on the
transfer by the [dealer] of good title to each motor vehicle the [dealer] offers for sale." Id.
§ 503.033(b)(2)(B). We hold that Car One failed to meet this condition by using the proceeds from
the sale of consigned vehicles for purposes other than the transfer of good title, thus forcing Arcadia
to use its own funds to transfer title to Car One's retail customers. Car One's omission was a breach
of the MCA, but it also serves as a violation of the transportation code because it is based on Car
One's failure to meet one of the code's conditions. See id.; id. § 503.033(d); Gramercy Ins. Co. v.
Arcadia Fin. Ltd., 32 S.W.3d 402, 407 (Tex. App.--Houston [14th Dist.] 2000, no pet.) ("Gramercy
I") (holding dealer's breach of contract will support claim against surety where failure to deliver
good title constitutes breach).

 In Gramercy I, Gramercy argued that it was not liable to Arcadia under section
503.033 for a dealer's failure to deliver good title to a consumer. The dealer was unable to transfer
title because it still owed a distributor over $16,000 for the vehicle in question. When the consumer
notified Arcadia of the dealer's failure to transfer title, Arcadia paid the distributor for the vehicle,
obtained clear title, then registered title to the consumer. Arcadia sued the dealer and obtained a
judgment for $16,000, the sum it had paid to clear title on behalf of the consumer. (3) Arcadia then
sued Gramercy on the judgment under section 503.033(d). Gramercy denied liability on several
theories, one of which was that section 503.033 was intended to protect only consumers, not
financing companies. "Thus, only a consumer, or individual to whom good title was to be delivered,
has standing to bring a claim under the statute." Gramercy I, 32 S.W.3d at 406. The court of
appeals rejected Gramercy's argument and held that section 503.033 is not limited to consumers in
its application. Id. The court further held that a "person" can obtain judgment against a surety even
if the person is not the one who paid the dealer to ensure delivery of good title. Id.

 The transportation code mandates that the bond be conditioned on "the transfer by
the [dealer] of good title to each motor vehicle the [dealer] offers for sale" in order to protect
"persons" in Arcadia's position. Tex. Trans. Code Ann. § 503.033(b)(2)(B). Even though Arcadia's
expenditures were not paid to Car One, the expense resulted from and was based on Car One's
failure to transfer title. In agreement with the Gramercy I court's analysis, we hold that Gramercy
is liable for the $19,912.92 Arcadia spent to deliver good titles to consumers who had purchased
consigned vehicles from Car One.

 Gramercy next contends that the county court at law's judgment should be reversed
because it was premised on the county court at law's finding that the federal-court judgment "related
to Arcadia's damages resulting from [Car One's] failure to transfer good title." (Emphasis added.) 
Gramercy argues that the fact that Arcadia's judgment against Car One related to Car One's failure
to transfer good title does not support the judgment against Gramercy because the transportation
code requires the original judgment to be based on the dealer's failure to deliver good title. See id. 
We agree with Gramercy that "related to" is not synonymous with "based on" for purposes of section
503.033. However, our review of the federal-court record reveals that the court assessed damages
based on an act or omission on which the surety bond was conditioned. See id. § 503.033(d). 
Therefore, any error in the trial court's finding was harmless.

 Gramercy further contends that the trial court's judgment should be reversed because
it was premised on the court's conclusion that the federal-court judgment "assessed damages and
reasonable attorney's fees against [Car One] based upon an act or omission on which the motor
vehicle dealer's surety bond is conditioned." Gramercy argues that the court's conclusion of law was
erroneous because the federal court actually found that Arcadia's damages were caused by the
"wrongful conduct" of Car One. We have previously observed that the federal court assessed
damages based on an act or omission on which the bond was conditioned. We overrule Gramercy's
first issue.


Breach of the MDA

 By its second issue, Gramercy argues that it is not liable to Arcadia under section
503.033 of the transportation code because Arcadia's damages arose from Car One's breach of the
MDA, not from a violation of the statute. Specifically, Gramercy reasons that the $62,838.62 portion
of the judgment Arcadia obtained in federal court resulted from Car One's failure to repurchase retail
installment contracts as required by the MDA. Following Gramercy's argument, Car One's actions
will not support a claim against the bond because the statute conditions a surety's liability only upon
the dealer's failure to transfer good title to each vehicle the dealer offers for sale, not upon the
dealer's failure to repurchase retail installment contracts pursuant to a private agreement. See id.
§ 503.033(b)(2). We agree with Gramercy and hold that the $62,838.62 judgment against Car One
for breach of the MDA does not support a claim under section 503.033. Arcadia presented no
evidence to show that it was forced to expend any money, other than the $19,912.92 already
discussed, as a result of Car One's failure to deliver good title.

 Arcadia asserts that if this Court follows Gramercy I, we must hold that the
$62,838.62 portion of Arcadia's judgment against Car One supports Arcadia's claim under section
503.033. Gramercy I established that "a claim against a dealership for breach of contract, where
failure to deliver good title constitutes the breach, will support a claim against the surety for the
dealer's failure to deliver good title." Gramercy I, 32 S.W.3d at 407 (citing Geters, 834 S.W.2d at
49). However, Car One's breach of the MDA occurred when it refused to repurchase the retail
installment sales contracts from Arcadia. Not every breach of an agreement between a dealer and
financier gives rise to an action under section 503.033. See Gramercy Ins. Co. v. MRD Invs., Inc.,
No. 14-99-1242-CV (Tex. App.--Houston [14th Dist.] May 3, 2001, no pet. h.) (holding dealer's
insufficient checks to cover drafts drawn on financier by dealer pursuant to oral floor-plan agreement
may have been violation of floor-plan agreement but did not violate bond condition); Riverbend
Bank, 966 S.W.2d at 187 (holding where dealer defaulted on floor-plan arrangement and collateral
insufficient to cover default, bond condition not violated).

 The $62,838.62 portion of the federal-court judgment against Car One was not based
on an act or omission on which Car One's bond was conditioned. See Tex. Transp. Code Ann.
§ 503.033(d). Therefore, there was no breach of a bond condition, and that portion of the judgment
does not support an action against Gramercy as surety. We sustain Gramercy's second issue.


Attorney's Fees

 By a single issue, Arcadia argues that "the trial court erred in refusing to render
judgment for Arcadia for attorneys' fees" incurred in pursuing its county-court-at-law action against
Gramercy. (4) Arcadia argues that the civil practice and remedies code allows the recovery of such
fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 1997). To support its argument,
Arcadia directs this Court only to Union National Bank v. Moriarity, 746 S.W.2d 249, 255 (Tex.
App.--Texarkana 1987, writ denied). However, Moriarity stands for no more than that an insured
may recover attorney's fees after a successful suit against her insurer based on a contract of
insurance. Id. Moriarity has no application to a suit against a surety by one not a party to the bond.

 We have neither been cited to nor found appellate authority where a claimant under
a bond authorized by transportation code section 503.033 has been either allowed or denied
attorney's fees after a suit against the bond's surety. Trial courts have generally denied attorney's
fees to the successful claimant. See, e.g., Gramercy I, 32 S.W.3d at 405; Riverbend Bank, 966
S.W.2d at 184. But, in neither case, did the appellate court reach the issue. See Gramercy I, 32
S.W.3d at 409; Riverbend Bank, 966 S.W.2d at 188.

 The supreme court has held, in discussing the liability of a surety under a contractor's
bond for labor and materials mandated by the McGregor Act, (5) that the general attorney's fees statute
must give way to the terms of the specific statute that creates the surety's obligation. "The claim and
ensuing suit are grounded entirely on the surety obligation. The material was furnished not to the
surety but to the contractor-principal." New Amsterdam Cas. Co. v. Texas Indus., Inc., 414 S.W.2d
914, 916 (Tex. 1967); accord Graham v. San Antonio Mach. & Supply Corp., 418 S.W.2d 303, 308
(Tex. 1967); cf. Sheldon Pollack Corp. v. Pioneer Concrete of Tex., Inc., 765 S.W.2d 843, 847-48
(Tex. App.--Dallas 1989, writ denied) (holding attorney's fees provisions of civil practice and
remedies code unavailable to claimant whose action is against surety based on statutory indemnity
bond).

 However, it appears that the supreme court has overruled sub silentio its previous
holdings and now allows the obligee under a statutory bond to utilize the civil practice and remedies
code to recover attorney's fees in a suit against the surety. In Great American Insurance Co. v.
North Austin Municipal Utility District No. 1, where the obligee under a McGregor Act bond brought
suit directly against the bond's surety for the default of the principal, the court held that such obligee
"has a right to sue on the surety bond issued by [the surety] and is entitled under section 38.001 of
the Texas Civil Practice and Remedies Code to recover attorneys' fees as a result of [the surety's]
own default on the terms of its bond." 908 S.W.2d 415, 428 (Tex. 1995) (footnote omitted). In so
holding, the court noted that a suretyship contract has three parties, the principal, the surety, and the
obligee, with the surety making a direct promise to the obligee, as the intended beneficiary of the
contract. Id. at 427. "The intended beneficiary can bring suit to enforce the contract." Id. (citing
Paragon Sales Co. v. New Hampshire Ins. Co., 774 S.W.2d 659, 660 (Tex. 1989); Dairyland County
Mut. Ins. Co. v. Childress, 650 S.W.2d 770, 775 (Tex. 1983); Quilter v. Wendlend, 403 S.W.2d 335,
337 (Tex. 1966)).

 We find no meaningful distinction between a bond mandated by the McGregor Act
and a bond mandated by the transportation code. (6) We sustain Arcadia's issue and hold that the
county court at law erred in refusing to award Arcadia attorney's fees for its successful action against
Gramercy. In this cause, the record reflects clear, direct, and positive testimony of Arcadia's
attorney, uncontradicted by any other witness or other attendant circumstances, as to the work
performed, the nature of the services rendered, and the reasonableness of the fees charged. Under
such circumstances, and in the interest of judicial economy, this Court may render judgment for
Arcadia. See Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 882 (Tex. 1990).


CONCLUSION

 The county court at law rendered judgment in favor of Arcadia, inter alia, for
$25,000. We modify that portion of the judgment to reflect an award of $19,912.92 and render
judgment for Arcadia for attorney's fees in the amount of $6250, to be reduced by $1250 in the event
that no petition for review is filed in the supreme court. In all other respects, the judgment of the
county court at law is affirmed.



 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Modified and, as Modified, Affirmed

Filed: August 30, 2001

Publish

1. The actual damages and attorney's fees and expenses found by the federal court aggregate $1
less than the court's award.
2. The federal court rendered judgment jointly and severally against Car One and its president,
Ross K. Edwards. The judgment also awarded Arcadia exemplary damages of $59,738.76 against
Edwards. Edwards is not a party to the cause now before this Court.
3. The trial-court judgment against the dealer totaled $27,076.46 in principal. The total reflects
an additional $11,076.46 that the court awarded to Arcadia as a result of the dealer's violation of the
Deceptive Trade Practices Act. The $11,076.46 portion of the judgment was later reversed. 
Gramercy Ins. Co. v. Arcadia Fin. Ltd., 32 S.W.3d 402, 408 (Tex. App.--Houston [14th Dist.] 2000,
no pet.).
4. At trial, Arcadia proffered undisputed testimony that a reasonable attorney's fee through trial
would be $3500, an additional $1500 if the case were appealed to this Court, and an additional
$1250 if a petition for review were filed with the supreme court.
5. See Tex. Rev. Civ. Stat. Ann. art. 5160, repealed by Act of April 30, 1993, 73d Leg., R.S., ch.
268, § 46(1), 1993 Tex. Gen. Laws 583, 986 (current version at Tex. Gov't Code Ann. § 2253.021
(West 2000)).
6. The only arguable difference between the obligee in Great American and Arcadia is that the
Great American obligee was specifically named in the bond. See Great Am. Ins. Co. v. North Austin
Mun. Util. Dist. No. 1, 908 S.W.2d 415, 427 (Tex. 1995). However, in no case cited by the supreme
court in support of the right of an intended beneficiary to bring suit to enforce a suretyship contract,
and thus be entitled to recover attorney's fees under the civil practice and remedies code, was the
specific obligee named in the contract. See id. (citing Paragon Sales Co. v. New Hampshire Ins. Co.,
774 S.W.2d 659, 660 (Tex. 1989); Dairyland County Mut. Ins. Co. v. Childress, 650 S.W.2d 770,
775 (Tex. 1983); Quilter v. Wendlend, 403 S.W.2d 335, 337 (Tex. 1966)).