**GRAMERCY INSURANCE COMPANY/ARCADIA FINANCIAL LTD., Appellants,**

v.

**ARCADIA FINANCIAL LTD./GRAMERCY INSURANCE COMPANY, Appellees.**

**No. 03–00–00714–CV.**

Court of Appeals of Texas, Austin.

Aug. 30, 2001.

Rehearing Overruled Nov. 8, 2001.

G. Dennis Sullivan, Sullivan, Ave & Holston, Dallas, for Gramercy.

Donald L. Turbyfill, Devlin, Naylor & Turbyfill, P.L.L.C., Houston, for Arcadia.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

LEE YEAKEL, Justice.

Appellant Gramercy Insurance Company ("Gramercy") appeals from a county-court-at-law judgment in favor of appellee, Arcadia Financial Ltd. ("Arcadia"). Arcadia sued Gramercy seeking recovery under a statutory motor-vehicle-dealer bond after Arcadia obtained judgment against the bond's principal, Car One Finance, Inc. ("Car One"), in federal district court. We

will modify and, as modified, affirm the county court at law's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Arcadia provides purchase-money financing to retail customers of automobile dealers. Car One is a licensed used car dealer. In order to obtain its license to sell vehicles, Car One purchased a $25,000 surety bond from Gramercy. *See* Tex. Transp.Code Ann. § 503.033 (West 1999). The bond, as required by statute, was conditioned, in relevant part, on Car One's "transfer ... of good title to each motor vehicle [Car One] offers for sale." *Id.* § 503.033(b)(2)(B).

Car One and Arcadia were parties to two contracts. They refer to the first contract as the Master Consignment Agreement ("MCA"). Under the MCA, whenever Arcadia repossessed a vehicle, Car One would take the vehicle on consignment and attempt to sell it from Car One's lot. Arcadia retained a purchase-money security interest in the consigned vehicles. The MCA required Car One, among other things, to pay all taxes and license fees required upon the sale of a consigned vehicle. The MCA also provided that Arcadia would pay Car One a fixed fee for each consigned car sold.

The parties refer to the second contract as the Master Dealer Agreement ("MDA"). Under the MDA, Arcadia agreed to purchase the retail installment sales contract from Car One whenever one of the vehicles it had repossessed was resold to a third party. The MDA also obligated Car One to repurchase the retail installment sales contract from Arcadia whenever "Car One [took] any action or fail[ed] to take any action of any kind which affect[ed] the validity or enforceability of the [installment sales contract] in the reasonable judgment of Arcadia." The

record contains no evidence that Arcadia purchased automobiles from or sold automobiles to Car One.

The controversy began when Car One allegedly defaced or attempted to alter titles to vehicles that it possessed on consignment by virtue of the MCA. According to Gary Condensa, one of Arcadia's buying center managers, Car One failed to use the proceeds from the sale of consigned vehicles to pay taxes on the vehicles and transfer title to the consumers who had purchased them. When Arcadia discovered Car One's failure, Arcadia "made demand on [Car One] to get the titles properly transferred and into the customer's name." In response, Car One "altered" the titles and returned them to Arcadia. The record is unclear as to the nature of the alterations. Arcadia then attempted to exercise its option under the MDA to force Car One to repurchase the installment sales contracts from Arcadia, but Car One refused. As a result, Arcadia expended $19,912.92 of its own funds to pay taxes on and transfer titles to the consigned vehicles that Car One had sold.

Arcadia sued Car One in federal district court to recover damages sustained as a result of Car One's alleged breaches of both the MCA and MDA. In its suit, Arcadia alleged that Car One breached the MCA by failing to transfer good title to the vehicles it offered for sale, thus impairing Arcadia's ability to perfect its purchase-money security interests in the consigned vehicles. Arcadia further alleged that Car One breached the MDA by refusing to repurchase at least twenty-three retail installment sales contracts that had been tainted by Car One's failure to deliver good title. The federal court found that Arcadia had suffered actual damages "resulting from breach of contract [the MDA] of $62,838.62" and $4500 "as attorneys fees and related expenses," for a total judg-

ment in favor of Arcadia by virtue of Car One's breach of the MDA of $67,339.62.[1] The court awarded Arcadia an additional $19,912.92 "by way of expenses by reason of the wrongful conduct of ... Car One" under the MCA. The federal court rendered a default judgment consistent with its findings in favor of Arcadia.[2] Both the federal court's final judgment and its order signed the same day, which contains the court's findings, consolidate the court's attorney's fees award with the damages assessed against Car One for breach of the MDA. We therefore presume that the federal court did not intend that any part of the attorney's fees be attributable to the damages assessed by virtue of Car One's wrongful conduct under the MCA. *See Arcadia Fin. Ltd. v. Car One Fin., Inc.*, No. 4:98–CV–302–A (N.D.Tex. Dec. 28, 1998).

Arcadia notified Gramercy, as Car One's surety, of the federal-court judgment and demanded payment pursuant to the statutory bond. *See* Tex.Transp.Code Ann. § 503.033(d). When Gramercy refused to pay, Arcadia brought the present state-court action against Gramercy. Gramercy denied liability on the ground that Arcadia's damages arose from Car One's breach of contract, not from a violation of the transportation code. The county court at law entered judgment against Gramercy for the full face value of the bond plus pre- and postjudgment interest but did not award attorney's fees. Gramercy appeals by two issues. Arcadia asserts that the county court at law erred by refusing to award attorney's fees for its successful action against Gramercy.

1. The actual damages and attorney's fees and expenses found by the federal court aggregate $1 less than the court's award.

2. The federal court rendered judgment jointly and severally against Car One and its presi-

## DISCUSSION

### Standard of Review

 Generally, matters of statutory construction are questions of law. *Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). Whether a statute provides a particular remedy is a question for the court. *Wal–Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex.1999). Statutory construction inquiries must begin by looking to the plain and common meaning of the statute's words. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). If the disputed statute is clear and unambiguous, courts should give the statute its common meaning. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). Our objective when we construe a statute is to determine and give effect to the legislature's intent. *Liberty Mut. Ins. Co.*, 966 S.W.2d at 484. "To ascertain legislative intent, we must look to the statute as a whole and not to its isolated provisions." *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985); *Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 283 (Tex.App.— Austin 2000, pet. denied).

### *The Transportation Code*

The Texas Department of Transportation may not issue or renew a motor-vehicle-dealer license without proof that the dealer has obtained a $25,000 surety bond that is conditioned on (1) payment by the dealer of all valid bank drafts drawn by the dealer to purchase motor vehicles and (2) transfer by the dealer of good title to each motor vehicle the dealer offers for sale. *See* Tex.Transp.Code Ann.

dent, Ross K. Edwards. The judgment also awarded Arcadia exemplary damages of $59,738.76 against Edwards. Edwards is not a party to the cause now before this Court.

§ 503.033(a), (b)(2). A "person" may recover against a surety bond if the person obtains a judgment against a licensed motor-vehicle dealer that "assess[es] damages and reasonable attorney's fees based on an act or omission on which the bond is conditioned." *Id.* § 503.033(d). The liability of a surety is limited to the amount of the valid bank drafts drawn by the dealer to buy motor vehicles or *paid to the dealer for a motor vehicle for which the dealer did not deliver good title. Id.* § 503.033(e)(1) (emphasis added). A surety may also be liable for attorney's fees "that are reasonable in relation to the work performed" incurred in the recovery of the judgment against the dealer. *Id.* § 503.033(e)(2). However, the liability of a surety may not exceed the face value of the surety bond. *Id.* § 503.033(f).

██ A surety's liability is determined by the language of the bond itself. "A statute mandating a bond, such as section 503.033, is made a part of the bond and is controlling." *Lawyers Sur. Corp. v. Riverbend Bank, N.A.,* 966 S.W.2d 182, 187 (Tex.App.—Fort Worth 1998, no pet.) (citing *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992); *Howze v. Surety Corp. of Am.,* 584 S.W.2d 263, 266 (Tex.1979)).

### Breach of the MCA

By its first issue, Gramercy argues that it is not liable to Arcadia for the value of the bond because Arcadia obtained judgment in its suit against Car One on a theory "sounding in tort of conversion under the MCA" and "from the terms and breach of the MCA contract." Gramercy asserts that the $19,912.92 portion of the federal-court judgment was not based on one of the conditions for recovery allowed by section 503.033 of the transportation code, but rather on Car One's failure to use the proceeds from the sale of consigned automobiles to pay vehicle taxes and title fees as required by the MCA. Thus, the portion of Arcadia's judgment against Car One that arose from Car One's breach of the MCA does not fall under the statute because it was not "based on an act or omission on which the bond is conditioned." *See* Tex.Transp.Code Ann. § 503.033(d).

██ We disagree. To satisfy the transportation code, a bond "must be conditioned on the transfer by the [dealer] of good title to each motor vehicle the [dealer] offers for sale." *Id.* § 503.033(b)(2)(B). We hold that Car One failed to meet this condition by using the proceeds from the sale of consigned vehicles for purposes other than the transfer of good title, thus forcing Arcadia to use its own funds to transfer title to Car One's retail customers. Car One's omission was a breach of the MCA, but it also serves as a violation of the transportation code because it is based on Car One's failure to meet one of the code's conditions. *See id.; id.* § 503.033(d); *Gramercy Ins. Co. v. Arcadia Fin. Ltd.,* 32 S.W.3d 402, 407 (Tex. App.—Houston [14th Dist.] 2000, no pet.) ("*Gramercy I*") (holding dealer's breach of contract will support claim against surety where failure to deliver good title constitutes breach).

In *Gramercy I,* Gramercy argued that it was not liable to Arcadia under section 503.033 for a dealer's failure to deliver good title to a consumer. The dealer was unable to transfer title because it still owed a distributor over $16,000 for the vehicle in question. When the consumer notified Arcadia of the dealer's failure to transfer title, Arcadia paid the distributor for the vehicle, obtained clear title, then registered title to the consumer. Arcadia sued the dealer *and* obtained a judgment for $16,000, the sum it had paid to clear

title on behalf of the consumer.[3] Arcadia then sued Gramercy on the judgment under section 503.033(d). Gramercy denied liability on several theories, one of which was that section 503.033 was intended to protect only consumers, not financing companies. "Thus, only a consumer, or individual to whom good title was to be delivered, has standing to bring a claim under the statute." *Gramercy I,* 32 S.W.3d at 406. The court of appeals rejected Gramercy's argument and held that section 503.033 is not limited to consumers in its application. *Id.* The court further held that a "person" can obtain judgment against a surety even if the person is not the one who paid the dealer to ensure delivery of good title. *Id.*

The transportation code mandates that the bond be conditioned on "the transfer by the [dealer] of good title to each motor vehicle the [dealer] offers for sale" in order to protect "persons" in Arcadia's position. Tex.Trans.Code Ann. § 503.033(b)(2)(B). Even though Arcadia's expenditures were not paid to Car One, the expense resulted from and was based on Car One's failure to transfer title. In agreement with the *Gramercy I* court's analysis, we hold that Gramercy is liable for the $19,912.92 Arcadia spent to deliver good titles to consumers who had purchased consigned vehicles from Car One.

■ Gramercy next contends that the county court at law's judgment should be reversed because it was premised on the county court at law's finding that the federal-court judgment *"related to* Arcadia's damages resulting from [Car One's] failure to transfer good title." (Emphasis added.) Gramercy argues that the fact that Arcadia's judgment against Car One *related to* Car One's failure to transfer good title does not support the judgment against Gramercy because the transportation code requires the original judgment to be *based on* the dealer's failure to deliver good title. *See id.* We agree with Gramercy that "related to" is not synonymous with "based on" for purposes of section 503.033. However, our review of the federal-court record reveals that the court assessed damages based on an act or omission on which the surety bond was conditioned. *See id.* § 503.033(d). Therefore, any error in the trial court's finding was harmless.

Gramercy further contends that the trial court's judgment should be reversed because it was premised on the court's conclusion that the federal-court judgment "assessed damages and reasonable attorney's fees against [Car One] based upon an act or omission on which the motor vehicle dealer's surety bond is conditioned." Gramercy argues that the court's conclusion of law was erroneous because the federal court actually found that Arcadia's damages were caused by the "wrongful conduct" of Car One. We have previously observed that the federal court assessed damages based on an act or omission on which the bond was conditioned. We overrule Gramercy's first issue.

### Breach of the MDA

■ By its second issue, Gramercy argues that it is not liable to Arcadia under section 503.033 of the transportation code because Arcadia's damages arose from Car One's breach of the MDA, not from a violation of the statute. Specifically, Gramercy reasons that the $62,838.62 portion of the judgment Arcadia obtained in

---

**3.** The trial-court judgment against the dealer totaled $27,076.46 in principal. The total reflects an additional $11,076.46 that the court awarded to Arcadia as a result of the dealer's violation of the Deceptive Trade Practices Act. The $11,076.46 portion of the judgment was later reversed. *Gramercy Ins. Co. v. Arcadia Fin. Ltd.,* 32 S.W.3d 402, 408 (Tex.App.— Houston [14th Dist.] 2000, no pet.).

federal court resulted from Car One's failure to repurchase retail installment contracts as required by the MDA. Following Gramercy's argument, Car One's actions will not support a claim against the bond because the statute conditions a surety's liability only upon the dealer's failure to transfer good title to each vehicle the dealer offers for sale, not upon the dealer's failure to repurchase retail installment contracts pursuant to a private agreement. *See id.* § 503.033(b)(2). We agree with Gramercy and hold that the $62,838.62 judgment against Car One for breach of the MDA does not support a claim under section 503.033. Arcadia presented no evidence to show that it was forced to expend any money, other than the $19,912.92 already discussed, as a result of Car One's failure to *deliver good title.*

Arcadia asserts that if this Court follows *Gramercy I,* we must hold that the $62,838.62 portion of Arcadia's judgment against Car One supports Arcadia's claim under section 503.033. *Gramercy I* established that "a claim against a dealership for breach of contract, where failure to deliver good title constitutes the breach, will support a claim against the surety for the dealer's failure to deliver good title." *Gramercy I,* 32 S.W.3d at 407 (citing *Geters,* 834 S.W.2d at 49). However, Car One's breach of the MDA occurred when it refused to repurchase the retail installment sales contracts from Arcadia. Not every breach of an agreement between a dealer and financier gives rise to an action under section 503.033. *See Gramercy Ins. Co. v. MRD Invs., Inc.,* 47 S.W.3d 721 (Tex.App.—Houston [14th Dist.] no pet. h.) (holding dealer's insufficient checks to cover drafts drawn on financier by dealer pursuant to oral floor-plan agreement may

have been violation of floor-plan agreement but did not violate bond condition); *Riverbend Bank,* 966 S.W.2d at 187 (holding where dealer defaulted on floor-plan arrangement and collateral insufficient to cover default, bond condition not violated).

The $62,838.62 portion of the federal-court judgment against Car One was not based on an act or omission on which Car One's bond was conditioned. *See* Tex. Transp.Code Ann. § 503.033(d). Therefore, there was no breach of a bond condition, and that portion of the judgment does not support an action against Gramercy as surety. We sustain Gramercy's second issue.

### Attorney's Fees

By a single issue, Arcadia argues that "the trial court erred in refusing to render judgment for Arcadia for attorneys' fees" incurred in pursuing its county-court-at-law action against Gramercy.[4] Arcadia argues that the civil practice and remedies code allows the recovery of such fees. *See* Tex.Civ.Prac. & Rem.Code Ann. § 38.001 (West 1997). To support its argument, Arcadia directs this Court only to *Union National Bank v. Moriarty,* 746 S.W.2d 249, 255 (Tex.App.—Texarkana 1987, writ denied). However, *Moriarty* stands for no more than that an insured may recover attorney's fees after a successful suit against her insurer based on a contract of insurance. *Id. Moriarty* has no application to a suit against a surety by one not a party to the bond.

We have neither been cited to nor found appellate authority where a claimant under a bond authorized by transportation code section 503.033 has been either allowed or denied attorney's fees after a suit against the bond's surety. Trial courts have gen-

---

**4.** At trial, Arcadia proffered undisputed testimony that a reasonable attorney's fee through trial would be $3500, an additional $1500 if the case were appealed to this Court, and an additional $1250 if a petition for review were filed with the supreme court.

erally denied attorney's fees to the successful claimant. *See, e.g., Gramercy I,* 32 S.W.3d at 405; *Riverbend Bank,* 966 S.W.2d at 184. But, in neither case, did the *appellate* court reach the issue. *See Gramercy I,* 32 S.W.3d at 409; *Riverbend Bank,* 966 S.W.2d at 188.

The supreme court has held, in discussing the liability of a surety under a contractor's bond for labor and materials mandated by the McGregor Act,[5] that the general attorney's fees statute must give way to the terms of the specific statute that creates the surety's obligation. "The claim and ensuing suit are grounded entirely on the surety obligation. The material was furnished not to the surety but to the contractor-principal." *New Amsterdam Cas. Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 916 (Tex.1967); *accord Graham v. San Antonio Mach. & Supply Corp.,* 418 S.W.2d 303, 308 (Tex.Civ.App. 1967); *cf. Sheldon Pollack Corp. v. Pioneer Concrete of Tex., Inc.,* 765 S.W.2d 843, 847–48 (Tex.App.—Dallas 1989, writ denied) (holding attorney's fees provisions of civil practice and remedies code unavailable to claimant whose action is against surety based on statutory indemnity bond).

However, it appears that the supreme court has overruled *sub silentio* its previous holdings and now allows the obligee under a statutory bond to utilize the civil practice and remedies code to recover attorney's fees in a suit against the surety.

In *Great American Insurance Co. v. North Austin Municipal Utility District No. 1,* where the obligee under a McGregor Act bond brought suit directly against the bond's surety for the default of the principal, the court held that such obligee "has a right to sue on the surety bond issued by [the surety] and is entitled under section 38.001 of the Texas Civil Practice and Remedies Code to recover attorneys' fees as a result of [the surety's] own default on the terms of its bond." 908 S.W.2d 415, 428 (Tex.1995) (footnote omitted). In so holding, the court noted that a suretyship contract has three parties, the principal, the surety, and the obligee, with the surety making a direct promise to the obligee, as the intended beneficiary of the contract. *Id.* at 427. "The intended beneficiary can bring suit to enforce the contract." *Id.* (citing *Paragon Sales Co. v. New Hampshire Ins. Co.,* 774 S.W.2d 659, 660 (Tex. 1989); *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775 (Tex.1983); *Quilter v. Wendland,* 403 S.W.2d 335, 337 (Tex.1966)).

■ We find no meaningful distinction between a bond mandated by the McGregor Act and a bond mandated by the transportation code.[6] We sustain Arcadia's issue and hold that the county court at law erred in refusing to award Arcadia attorney's fees for its successful action against Gramercy. In this cause, the record reflects clear, direct, and positive testi-

---

5. *See* Tex.Rev.Civ.Stat.Ann. art. 5160, *repealed by* Act of April 30, 1993, 73d Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 583, 986 (current version at Tex.Gov't Code Ann. § 2253.021 (West 2000)).

6. The only arguable difference between the obligee in *Great American* and Arcadia is that the *Great American* obligee was specifically named in the bond. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 427 (Tex.1995). However, in no case cited by the supreme court in support of

the right of an intended beneficiary to bring suit to enforce a suretyship contract, and thus be entitled to recover attorney's fees under the civil practice and remedies code, was the specific obligee named in the contract. *See id.* (citing *Paragon Sales Co. v. New Hampshire Ins. Co.,* 774 S.W.2d 659, 660 (Tex. 1989); *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 775 (Tex.1983); *Quilter v. Wendland,* 403 S.W.2d 335, 337 (Tex. 1966)).

mony of Arcadia's attorney, uncontradicted by any other witness or other attendant circumstances, as to the work performed, the nature of the services rendered, and the reasonableness of the fees charged. Under such circumstances, and in the interest of judicial economy, this Court may render judgment for Arcadia. See *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990).

## CONCLUSION

The county court at law rendered judgment in favor of Arcadia, *inter alia,* for $25,000. We modify that portion of the judgment to reflect an award of $19,912.92 and render judgment for Arcadia for attorney's fees in the amount of $6250, to be reduced by $1250 in the event that no petition for review is filed in the supreme court. In all other respects, the judgment of the county court at law is affirmed.